STATE of Wisconsin,
Plaintiff-Respondent,

v.

Larry A. TIEPELMAN,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2004AP914–CR. Decided June 9, 2006.*

2006 WI 66

(Also reported in 717 N.W.2d 1.)

For the defendant-appellant-petitioner, there were briefs by *Suzanne L. Hagopian,* assistant state public defender.

For the plaintiff-respondent, there was a brief by *Christopher G. Wren*, assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager*, attorney general.

¶ 1. N. PATRICK CROOKS, J. Larry A. Tiepelman (Tiepelman) seeks review of a published court of appeals' decision[1] affirming a circuit court's judgment of conviction and postconviction order that denied his motion for resentencing. Tiepelman's motion was based on his claim that the circuit court relied on inaccurate information at his sentencing hearing. The issue before this court is whether, on a motion for resentencing based on the circuit court's alleged reliance on inaccurate information, a defendant must prove that the circuit court actually relied on the inaccurate information, or that the court prejudicially relied on the inaccurate information.

¶ 2. We hold that in a motion for resentencing based on a circuit court's alleged reliance on inaccurate information, a defendant must establish that there was information before the sentencing court that was inaccurate, and that the circuit court actually relied on the inaccurate information. Here, the court of appeals applied the wrong test—prejudicial reliance[2]—when it affirmed the circuit court. We must, therefore, reverse

---

[1] *State v. Tiepelman*, 2005 WI App 179, 286 Wis. 2d 464, 703 N.W.2d 683.

[2] Whether the test is actual reliance or prejudicial reliance is significant. Obviously, establishing prejudicial reliance presents a far more difficult barrier for a defendant to overcome than establishing that the circuit court actually relied on inaccurate information at sentencing.

that affirmance, and withdraw any language in *State v. Montroy,* 2005 WI App. 230, 287 Wis. 2d 430, 706 N.W.2d 145, *State v. Groth,* 2002 WI App 299, 258 Wis. 2d. 889, 655 N.W.2d 163, *State v. Suchocki,* 208 Wis. 2d. 509, 516, 561 N.W.2d 332 (Ct. App. 1997), *State v. Coolidge,* 173 Wis. 2d 783, 496 N.W.2d 701 (Ct. App. 1993), and *State v. Littrup,* 164 Wis. 2d 120, 473 N.W.2d 164 (Ct. App. 1991), to the contrary.

¶ 3. Only after the defendant meets this burden to show that the sentencing court actually relied on inaccurate information, does the burden then shift to the state to establish that the error was harmless.

¶ 4. Here the parties agree, as does this court, that there was inaccurate information actually relied on by the circuit court at sentencing. It seems clear that the parties also agree that the issue of harmless error was not developed to the degree necessary to assist this court in resolving that issue, and since they also agree that this matter should be remanded for resentencing, it is appropriate that, under such circumstances, we accept their stipulation. We, therefore, reverse the decision of the court of appeals and remand this case to the circuit court for resentencing.[3]

---

[3] In a letter dated March 31, 2006, the State of Wisconsin wrote to the court to inform it that the parties had reached an agreement that Tiepelman should be resentenced. The letter reads, in relevant part:

The State and Mr. Tiepelman have already concurred on the principal issue in this case: the defendant's burden when claiming that the circuit court imposed a sentence based on inaccurate information. Although I recognize that the court can disregard concessions or stipulations on legal issues, I urge the court not to do so. I believe the burden on which the State and Mr. Tiepelman have agreed represents the correct statement of the two conflicting standards found in Wisconsin case law.

I

¶ 5. On December 17, 1996, Tiepelman was convicted of one count of theft by false representation as a repeat offender, contrary to Wis. Stat. §§ 943.20(1)(d) and 939.62 (1995–96). Following his conviction, the circuit court withheld sentence and placed Tiepelman on probation for 16 years. On April 21, 2003, Tiepelman's probation was revoked, and he returned to the circuit court for sentencing.

¶ 6. On September 5, 2003, the Richland County Circuit Court, Judge Edward E. Leineweber presiding, held a sentencing hearing, resulting in the imposition of an indeterminate sentence of 12 years imprisonment. In reaching its sentencing decision, the circuit court considered Tiepelman's presentence investigation report (PSI), which had correctly documented his criminal background. However, when referring to the PSI, the circuit court mistakenly stated that the PSI showed "something over twenty prior convictions at the time of the commission of this offense back in [November] 1995." While the PSI had shown 20 charged offenses as of November 1995, it had also accurately reflected that only five of those offenses had resulted in convictions as of that date.

The remaining issue concerns the matter of the State's obligation to prove harmless error once the defendant satisfies his or her burden. In the briefs in this court, the parties have presented differing declarations of the harmless-error standard. . . . I concluded that the harmless-error issue in the context of a claim like Mr. Tiepelman's implicates additional tests and issues that neither the State nor Mr. Tiepelman addressed in the briefs in this court or in the court of appeals. Consequently, in my view, the harmless-error issue is not developed at this point to a degree that would usefully assist the court in dealing with this issue.

¶ 7. Tiepelman filed a postconviction motion seeking resentencing, arguing that the circuit court violated his right to due process, because the circuit court relied on inaccurate information about Tiepelman's criminal record. At the postconviction hearing, Judge Leineweber again presiding, the circuit court acknowledged that the reference to "over twenty prior convictions" was wrong. However, the court stated that there had not been reliance on an inaccuracy that was material, because Tiepelman conceded the pertinent underlying conduct, and, therefore, the circuit court denied Tiepelman's motion for resentencing. *State v. Tiepelman,* 2005 WI App 179, ¶ 5, 286 Wis. 2d 464, 703 N.W.2d 683.

¶ 8. Tiepelman appealed the denial, and the court of appeals affirmed the circuit court. Citing *Groth* and *Littrup,* the court of appeals set forth Tiepelman's burden as "showing, by clear and convincing evidence, both the inaccuracy of some information and that the sentencing judge prejudicially relied on the inaccurate information." *Id.,* ¶ 7. As the State of Wisconsin (State) had conceded that Tiepelman had met his burden of showing the inaccuracy of the information, the court of appeals stated "[t]he dispositive issue here is the second prong: Did Tiepelman meet his burden of showing prejudicial reliance?" *Id.* (emphasis omitted). Based largely on statements made by the circuit court during the motion hearing, the court of appeals held that Tiepelman had failed to prove prejudicial reliance, and therefore affirmed the circuit court's denial of the motion for resentencing and Tiepelman's conviction. Tiepelman petitioned for review of the decision of the court of appeals, and his petition was accepted.

## II

¶ 9. A defendant has a constitutionally protected due process right to be sentenced upon accurate information. *State v. Johnson,* 158 Wis. 2d 458, 468, 463 N.W.2d 352 (Ct. App. 1990) (citing *United States v. Tucker,* 404 U.S. 443, 447 (1972)). Whether a defendant has been denied this due process right is a constitutional issue that an appellate court reviews de novo. *Coolidge,* 173 Wis. 2d at 789.

¶ 10. A defendant's right to be sentenced upon accurate information was first set forth by the United States Supreme Court in *Townsend v. Burke,* 334 U.S. 736 (1948). *Townsend* held that a sentence based on "assumptions concerning . . . [a person's] criminal record which were materially untrue . . . is inconsistent with due process of law, and such a conviction cannot stand." *Id.* at 741. The Court specifically noted that the sentence in question was "within the limits set by the statute" and therefore not "unduly severe." *Id.*

> It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.

*Id.*

¶ 11. This due process right to be sentenced upon accurate information was further developed by the United States Supreme Court in *Tucker,* 404 U.S. 443. During Tucker's sentencing proceeding, the sentencing judge had "conducted an inquiry into the respondent's background, and, the record shows, gave *explicit atten-*

*tion* to the three previous felony convictions the respondent had acknowledged." *Id.* at 444 (emphasis added) (footnote omitted). However, it was later conclusively determined that two of the defendant's prior convictions were constitutionally invalid under *Gideon v. Wainwright,* 372 U.S. 335 (1963), having "resulted from proceedings in which the respondent had been unrepresented by counsel, and that he had been neither advised of his right to legal assistance nor did he intelligently and understandingly waive this right to the assistance of counsel." *Tucker,* 404 U.S. at 445 (internal quotations omitted) (footnote omitted).

¶ 12. The *Tucker* Court emphasized that the record made "evident that the sentencing judge gave *specific consideration* to the respondent's previous convictions before imposing sentence upon him." *Id.* at 447 (emphasis added). As two of those convictions were determined to be invalid, the United States Supreme Court remanded the case to the circuit court for reconsideration of Tucker's sentence. *Id.* at 449. The Court reasoned:

> For if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding. Instead of confronting a defendant who had been legally convicted of three previous felonies, the judge would have been dealing with a man who beginning at age 17, had been unconstitutionally imprisoned for more than ten years, including five and one-half years on a chain gang.

*Id.* at 448 (footnote omitted). While not explicitly addressing the issue of harmless error, the Court stated that "the real question here is . . . whether the sentence in the 1953 federal case might have been different if the

sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained." *Id.* (footnote omitted).

¶ 13. The actual reliance standard was subsequently followed by the Seventh Circuit Court of Appeals in *Welch v. Lane,* 738 F.2d 863 (7th Cir. 1984). In that case, "[a]lthough the prosecutor told the court quite clearly that petitioner had been convicted of *robbery* in 1976, [during the defendant's sentencing hearing] the sentencing judge said that petitioner had been convicted of *armed robbery,* a Class X offense under Illinois law." *Id.* at 864 (emphasis in original). In explaining his decision to sentence Welch to the maximum allowable term, the judge stated: "The jury found the defendant guilty of three Class X offenses and a significant factor in the Court's determination of the sentence here is that this defendant has within the past ten years been convicted of the offense of armed robbery which is an offense of the same magnitude . . . of which he is now convicted." *Id.*

¶ 14. *Lane* articulated the *Townsend/Tucker* test as requiring that a sentence be "set aside where the defendant can show that false information was part of the basis for the sentence. The two elements of that showing are, first, that information before the sentencing court was inaccurate, and second, that the sentencing court relied on the misinformation in passing sentence." *Id.* at 865. Whether the court "actually relied" on the incorrect information at sentencing was based upon whether the court gave "explicit attention" or "specific consideration" to it, so that the misinformation "formed part of the basis for the sentence." *Id.* at 866.

¶ 15. An examination of case law in Wisconsin reveals that, although the actual reliance standard was properly formulated, initially, the court of appeals be-

187

gan to stray from that standard in some cases by requiring the proof of prejudicial, rather than actual reliance.

¶ 16. In *Johnson,* 158 Wis. 2d 458, the defendant requested resentencing, based upon allegations that the court had relied on erroneous information at his sentencing. Specifically, Johnson challenged "the court's statement that it was aware of the severe emotional damage and the 'suffering' incurred by the victims," because he claimed that "one of the victims was not emotionally damaged," by Johnson's repeated sexual assaults. *Id.* at 468.

¶ 17. The court of appeals in *Johnson* correctly articulated the standard, stating "a defendant who requests resentencing based on inaccurate information must show both that the information was inaccurate, and that the court actually relied on the inaccurate information in the sentencing." *Id.* (citing *Lane,* 738 F.2d at 865). Because the court concluded that Johnson had failed to prove that the information on the victim's emotional damage was inaccurate, he "failed to carry his burden of establishing that the trial court improperly relied on erroneous information." *Id.* at 469.

¶ 18. Just one year later, in *Littrup,* 164 Wis. 2d 120, defendant Littrup challenged the accuracy of the state's PSI, claiming "that alleged inaccuracies in it violated his due process rights by influencing the sentence of the trial court." *Id.* at 128 (footnote omitted). The defendant argued that he did not need to show prejudice to establish a due process violation, relying on *State v. Skaff,* 152 Wis. 2d 48, 58, 447 N.W.2d 84 (Ct. App. 1989). The court of appeals rejected Littrup's position, distinguishing the facts of his case from those in *Skaff.* In *Skaff,* the court of appeals held that the defendant need not show prejudice from a PSI to

prevail on a claim, because the court concluded the circuit "court's blanket policy of refusing to allow defendants to read their PSI[s]" constituted a due process violation in and of itself. *Littrup,* 164 Wis. 2d at 127 (citing *Skaff,* 152 Wis. 2d at 58).

¶ 19. Noting that there were "no cases in Wisconsin dealing with the proper burden of proof for claims of due process violations in the sentencing process," the court of appeals determined that on due process claims based on reliance on misinformation, the clear and convincing evidence burden of proof applied to sentence modification claims based upon the existence of a "new factor."[4] *Id.* at 131 (citing *State v. Franklin,* 148 Wis. 2d 1, 8–9, 434 N.W.2d 609 (1989)). The court of appeals then held that:

> to establish a due process violation in the sentencing process, a defendant has the burden of proving by clear and convincing evidence both the inaccuracy prong and the prejudice prong of the due process test. Only after the defendant meets that burden does the burden of persuasion to establish harmlessness rest with the state.

*Id.* at 132 (citing *Skaff,* 152 Wis. 2d at 58). Since the decision was published, *Littrup* has been cited numerous times by the court of appeals for the proposition that a defendant must show prejudicial reliance on inaccurate information in sentencing to be resentenced on that basis. *See, e.g., Montroy,* 287 Wis. 2d. 430, ¶ 8; *Groth,* 258 Wis. 2d 889, ¶ 22; *Suchocki,* 208 Wis. 2d. at 516.

---

[4] In *State v. Franklin,* this court defined "new factor" to be " 'a fact or set of facts highly relevant to the imposition of a sentence, but not known to the trial judge at the time of original sentencing.' " *State v. Franklin,* 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989) (citation omitted).

¶ 20. In *State v. Lechner,* this court considered a due process challenge to a sentence based upon the alleged reliance on inaccurate information in the defendant's PSI. *State v. Lechner,* 217 Wis. 2d 392, 419, 576 N.W.2d 912 (1998). Lechner pled no contest to second-degree reckless homicide, homicide by intoxicated use of a vehicle, causing great bodily harm by intoxicated use of a vehicle, and two counts of second-degree recklessly endangering the safety of another. *Id.* at 399–400. The circuit court sentenced Lechner to the maximum sentence on each count, running consecutively, for a total sentence of 30 years in prison. *Id.* at 400. Lechner challenged the sentence, arguing that the PSI contained inaccurate information regarding the number of his prior convictions. *Id.* at 419. The parties agreed that the PSI incorrectly listed four prior criminal convictions, when the defendant actually had three prior arrests, but only one prior criminal conviction. *Id.* at 419–20.

¶ 21. In its consideration of whether Lechner was entitled to resentencing, this court adopted the test set forth in *Johnson,* stating: "A defendant who requests resentencing due to the circuit court's use of inaccurate information at the sentencing hearing 'must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing.' " *Id.* at 419 (quoting *Johnson,* 158 Wis. 2d at 468). Although this court recognized that the PSI did contain inaccurate information, after examining the record, it concluded that the circuit court did not actually rely on the inaccurate information in arriving at the sentence imposed. *Id.* at 419–20.

¶ 22. Later that same year, the court of appeals seemed to apply the correct test in *State v. Anderson,* 222 Wis. 2d 403, 588 N.W.2d 75 (Ct. App. 1998). In

*Anderson,* the defendant pled no contest to two counts of first-degree sexual assault of a child and two counts of causing mental harm to a child. *Id.* at 404. At the sentencing hearing, defendant's counsel advised the court that Anderson objected to portions of the PSI. Among other things, Anderson argued "that the victims' statements were partially inaccurate, and that information derived from police reports was later determined to be untrue." *Id.* at 405. Moreover, "[c]ounsel stated that the PSI did not disclose that some of the PSI's [more serious] allegations of sexual abuse had been investigated and found to be baseless." *Id.* In addition to a due process challenge based on the circuit court's alleged reliance on inaccurate information, Anderson also alleged his counsel had been ineffective in handling the sentencing.

¶ 23. Although it did not discuss *Lechner,* the court of appeals in *Anderson* did cite *Johnson* for the proposition that a defendant must show that specific information was inaccurate and "that the court actually relied upon the inaccurate information in sentencing." *Id.* at 408 (citation omitted). However, in its reasoning, the *Anderson* court came perilously close to conflating its analysis of the due process challenge with the claim of ineffective assistance of counsel, which does require a showing of prejudice. *Id.* at 410.

¶ 24. In 2002, the court of appeals returned to the requirement of "prejudicial reliance" in its decision in *Groth,* 258 Wis. 2d 889. Defendant Groth was convicted of second-degree reckless homicide while armed with a dangerous weapon. During his sentencing hearing, the prosecutor made repeated references to Groth's history of violence, including statements that Groth "beats up women who are pregnant." *Id.,* ¶ 16 (emphasis omitted). Groth moved for resentencing, arguing his sen-

tence had been based on inaccurate information. The prosecutor later conceded that, although Groth did have a history of domestic violence, he could not " 'find any factual basis for the representation that the defendant beats 'pregnant women.'" *Id.,* ¶ 18.

¶ 25. Citing *Littrup,* the court of appeals set forth the requirement that a defendant must establish "inaccuracy of the information and prejudicial reliance by the sentencing court—by clear and convincing evidence."[5] *Id.,* ¶ 22. The *Groth* court determined, however, that "[n]otwithstanding the postconviction court's disclaimer of reliance on the inaccurate information about beating pregnant women, we conclude . . . that the record establishes a very strong likelihood that the sentencing court did indeed rely on the information." *Id.,* ¶ 27. Therefore, the court concluded, Groth had satisfied his burden, and in turn, "the State [had] not established that the error was harmless." *Id.* (citing *Anderson,* 222 Wis. 2d at 411).

III

¶ 26. We hold that the correct standard was set forth by this court in *Lechner,* in which the court held: "A defendant who requests resentencing due to the circuit court's use of inaccurate information at the sentencing hearing 'must show both that the information was inaccurate and that the court actually relied on

---

[5] There is nothing in *State v. Johnson,* 158 Wis. 2d 458, 463 N.W.2d 352 (Ct. App. 1990), *State v. Lechner,* 217 Wis. 2d 392, 576 N.W.2d 912 (1998), nor *Welch v. Lane,* 738 F.2d 863 (7th Cir. 1984), which indicates whether the defendant's burden of proof is clear and convincing evidence. Therefore, we do not decide that issue.

the inaccurate information in the sentencing.' " *Lechner*, 217 Wis. 2d at 419 (quoting *Johnson*, 158 Wis. 2d at 468). Once actual reliance on inaccurate information is shown, the burden then shifts to the state to prove the error was harmless. As the Seventh Circuit Court of Appeals concluded in *Lane:*

> A convicted offender does not have a constitutional right to a particular sentence available within a range of alternatives, but the offender does have a right to a fair sentencing *process*—one in which the court goes through a rational procedure of selecting a sentence based on relevant considerations and accurate information.

*Lane,* 738 F.2d at 864–65 (emphasis in original).

¶ 27. Moreover, requiring a defendant to prove prejudicial reliance when there was inaccurate information relied upon at sentencing would effectively eliminate the state's burden of proving that such error was harmless. If reliance is prejudicial, by definition it cannot be harmless. Therefore, requiring a defendant to establish prejudicial rather than actual reliance, before the burden shifts to the state to prove the error was harmless, is illogical.

¶ 28. Applying the correct standard to this case, Tiepelman must establish two things: that some of the information presented was inaccurate, and that the sentencing court actually relied on that misinformation in reaching its determination in regard to the sentence imposed. Here, since the State concedes that the information was inaccurate, the first prong is satisfied.

¶ 29. In this case, the record makes it clear that the sentencing court specifically considered the inaccurate information in its decision. During the proceeding, the court referred to the contents of the PSI, stating:

Mr. Tiepelman, at the time of the commission of this offense, had a long pattern of similar offenses—or at least offenses of dishonesty, theft, false pretenses, et cetera. *I counted something over twenty prior convictions at the time of the commission of this offense* back in 1995. They include numerous issuance of worthless checks, they include other forgeries, thefts by false representation, several—more than one forgery, looks like a couple of forgeries, couple of thefts by false representation, theft in a business setting, again, worthless checks. A well-established pattern of criminal behavior dealing with theft and false representation, issuance of worthless checks, prior to the commission of this offense.

¶ 30. We are satisfied, based on the record and on the stipulation of the parties, that Tiepelman met his burden of showing that the circuit court actually relied on inaccurate information in reaching its decision on sentencing, thus meeting the requirements of the second prong of the test. We disagree with the circuit court's determination that the inaccurate information was not "material."[6] It was. Having met the burden of establishing that there was actual reliance on inaccurate information, as noted previously, the burden then shifts to the State to prove that the error was, nonetheless, harmless. However, in the State's letter, it was indicated that "a claim like Mr. Tiepelman's implicates additional tests and issues that neither the State nor Mr. Tiepelman addressed in the briefs in this court or in the court of appeals." Because the issue of harmless error was neither fully argued nor fully briefed by the

---

[6] By use of the word "material," the circuit court appeared to indicate that it did not actually rely on the inaccurate information.

parties to the degree that would allow this court to resolve the issue, we decline to address it further here.

## IV

¶ 31. We hold that in a motion for resentencing based on a circuit court's alleged reliance on inaccurate information, a defendant must establish that there was information before the sentencing court that was inaccurate, and that the circuit court actually relied on the inaccurate information. Here, the court of appeals applied the wrong test—prejudicial reliance—when it affirmed the circuit court. We must, therefore, reverse that affirmance, and withdraw any language in *Montroy,* 287 Wis. 2d 430, *Groth,* 258 Wis. 2d. 889, *Suchocki,* 208 Wis. 2d. 509, *Coolidge,* 173 Wis. 2d 783, and *Littrup,* 164 Wis. 2d 120, to the contrary. Only after the defendant meets this burden to show that the sentencing court actually relied on inaccurate information, does the burden then shift to the state to establish that the error was harmless. Here the parties agree, as does this court, that there was inaccurate information actually relied on by the circuit court at sentencing. It seems clear that the parties also agree that the issue of harmless error was not developed to the degree necessary to assist this court in resolving that issue, and since they also agree that this matter should be remanded for resentencing, it is appropriate under such circumstances that we accept their stipulation. We, therefore, reverse the decision of the court of appeals and remand this case to the circuit court for resentencing.

*By the court.* — The decision of the court of appeals is reversed, and this matter is remanded to the circuit court for resentencing.

¶ 32. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). The majority opinion clarifies that the test to be met by a defendant in a challenge to a sentence that was allegedly based on inaccurate information is whether the circuit court actually relied on inaccurate information in its sentencing decision. Majority op., ¶ 2. I agree with the majority opinion's conclusion. However, the majority opinion then accepts the parties' stipulation that the sentencing court did actually rely on inaccurate information. Majority op., ¶ 4. The majority opinion goes on to relate that because "[i]t seems clear that the parties also agree that the issue of harmless error was not developed to the degree necessary to assist this court in resolving that issue" and because the parties agree the matter should be remanded for re-sentencing, it is appropriate to reverse a published court of appeals decision, with no further analysis of the issues that are presented. Majority op., ¶ 4.

¶ 33. When we overturn a published decision of the court of appeals, we must do so based on an error of law that actually requires reversal, not based on a stipulation between the parties. To do as the majority opinion does here is to place the stipulation of parties to litigation above a decision rendered by constitutional officers, the elected judges of the circuit court and the court of appeals. The Wisconsin Supreme Court has no power to overturn a judicial decision based on an agreement between the parties to litigation. *See* Wis. Stat. § 809.18 (2003–04).[1]

¶ 34. Instead of proceeding as set out in the majority opinion, I would apply the test of actual reliance to the facts of the case, as provided by the

---

[1] All further references to the Wisconsin statutes are to the 2003–04 version unless otherwise noted.

record before us. My application of that test to the record and to the arguments provided in the parties' briefs leads me to conclude that Tiepelman has not shown by clear and convincing evidence that the circuit court actually relied on inaccurate information. Furthermore, even if I were to assume, arguendo, that the circuit court did so rely, I conclude that such an error was proved to be harmless beyond a reasonable doubt. Therefore, I would affirm the court of appeals, and I respectfully dissent from the majority opinion.

## I. BACKGROUND

¶ 35. The majority concludes that "the record makes it clear that the sentencing court specifically considered the inaccurate information in its decision." Majority op., ¶ 29. It bases this statement on the sentencing transcript, which reveals that the circuit court stated during the sentencing that Tiepelman had more than twenty prior convictions. Majority op., ¶ 29. It then concludes that, based on the court's reference to an incorrect number of convictions and the stipulation of the parties, Tiepelman has met his burden to establish actual reliance on inaccurate information. Majority op., ¶ 30.

¶ 36. The record contains a thorough exposition of the circuit court's reasoning for its sentencing decision, wherein the court cited its considerations. At sentencing, the circuit court said:

> In looking at those factors in Mr. Tiepelman's case, first the seriousness of the offense, it is a substantial theft. The original check written by Mr. Tiepelman on his employer's account was—it's all documented in the PSI and in the record here—was over some $24,000. The amount which the Community First Bank, who

197

took the loss, is currently out has been established by earlier proceedings at $9,341.46.

As I recall, Mr. Tiepelman took a substantial portion of the proceeds and bought snowmobiles with it at Viteznik's. It is not a theft which by anybody's account can be considered a minor offense. It was premeditated, it was somewhat sophisticated, and it was obviously an out and out theft of significant proportions.

I believe that it is the highest category of theft that was in the criminal code at the time, that is, exceeding $2,500, so the only thing you can say about it is that this category of theft was intended to reach any amount of felony theft, no matter how large, above $2,500. And it's certainly possible, theoretically possible, to steal an awful lot more than twenty-four- or twelve- or $9,000, but by, I think, anybody's account, to do somebody out of over $9,000 is a substantial theft.

Turning to the character of the offender, I have to agree with . . . all of the various people who were interviewed for the purposes of the pre-sentence investigation who reported numerous small and large thefts, dishonesties, false identifications, in dealing with Mr. Tiepelman. Mr. Tiepelman, at the time of the commission of this offense, had a long pattern of similar offenses—or at least offenses of dishonesty, theft, false pretenses, et cetera. I counted something over twenty prior convictions at the time of the commission of this offense back in 1995. They include numerous issuance of worthless checks, they include other forgeries, thefts by false representation, several—more than one forgery, looks like a couple of forgeries, couple of thefts by false representation, theft in a business setting, again, worthless checks. A well-established pattern of criminal behavior dealing with theft and false representation, issuance of worthless checks, prior to the commission of this offense.

There also is a record of assaultive offenses. Although I agree . . . that that is not the primary characteristic of Mr. Tiepelman, but nor can it be ignored. He has a conviction for battery, apparently to his now ex-wife. He has a conviction for violating the no contact provision. He has various bail and bond violation convictions, again dealing with the violation of the restrictions against having contact with his wife. So he is properly characterized as assaultive and a domestic abuser, at least to that extent.

Mr. Tiepelman, having accumulated this record, has absolutely no credibility with this Court. . . . Mr. Tiepelman takes the tack today in explaining his record —which is a pretty standard approach to take, but given Mr. Tiepelman's record it is all the more breathtaking in its sillyness [sic], and that is that it's someone else's fault that I've committed all these offenses. I haven't gotten the help that I've needed. It's the Department of Corrections' fault because they didn't prohibit me from having a checking account. It's someone else's fault in my past for not getting me the help I needed.

I believe that Mr. Tiepelman can stop himself any time he wants to, and he chooses not to be honest, chooses not to be law abiding. He is a criminal thinker from way back. Now, it's true that counseling might help, but this is not a mental disease or defect. Has not been asserted as such anywhere during the course of these proceedings. It's a character defect.

Mr. Tiepelman has no moral compass that I could discern. . . . Mr. Tiepelman is conning when he gets up in the morning, he's conning as he goes through the day, he's conning before he falls asleep at night if he thinks there's any advantage he can gain from it, if there's any benefit he can accrue to himself. . . . I believe that Mr. Tiepelman is a significant risk to the public. . . . So the offense is serious; Mr. Tiepelman has very little positive

199

going for him with respect to character, and he presents an ongoing risk to the public.

There is an issue in Mr. Tiepelman's sentencing scenario which calls for punishment, as well as sending a message of deterrence to others, but to me the most significant factor is Mr. Tiepelman's character and the ongoing danger he presents to the public, as well as the seriousness of the offense. . . . I am sentencing him in light of his conduct since the offense. I'm also primarily sentencing him for the flat out theft that got him convicted.

¶ 37. The circuit court identified Tiepelman's overall pattern of behavior, the seriousness of the immediate offenses, and his conduct since the conviction of the immediate crimes as the factors that most influenced its decision. Although the circuit court referred to an incorrect number of convictions, the correct number of convictions, as well as other criminal conduct that did not result in convictions, were accurately represented in the presentence investigation report (PSI). The court used the PSI in sentencing Tiepelman. The PSI reveals the following: (1) the offenses for which he was sentenced began with a series of transactions in 1995 to buy two snowmobiles with bad checks; (2) Tiepelman blamed the crime on his emotional state that resulted from his divorce and the death of his father and on his desire to have nice things; (3) the First Community Bank's representative stated that the bank wished to recover the funds paid out for those bad checks, but that Tiepelman had not followed through on his restitution obligation while on probation.

¶ 38. The PSI shows that Tiepelman has an extensive adult record, both before and after the convictions that were the subject of the sentencing, includ-

ing: (1) a 1988 charge of issuing a worthless check for which a bench warrant was issued because Tiepelman did not appear; (2) a 1990 charge of issuing a worthless check, which was subsequently dismissed; (3) a 1990 charge of issuing a worthless check, for which Tiepelman was convicted; (4) a 1990 charge of issuing a worthless check, for which charges were dismissed; (5) 1991 charges of battery, disorderly conduct, bail jumping, bond violation and violating a no contact provision that were dismissed for a plea to a charge of issuing a worthless check; (6) a 1991 issuing a worthless check charge, for which the disposition remained unknown; (7) 1991 convictions of forgery, felony theft and false representation; (8) a 1992 conviction of disorderly conduct and dismissal of a count of battery and consolidation of a bond violation charge; (9) a 1995 conviction of issuing worthless checks; (10) a 1995 conviction of theft in a business setting; (11) a 1995 conviction of theft and false representation with an habitual criminality enhancer; (12) 2001 convictions of disorderly conduct with an habitual criminality enhancer; (13) a 2002 no contest plea to speeding; and (14) two pending counts of issuing worthless checks with habitual criminality enhancers. The PSI also relayed information about Tiepelman's periods of incarceration for the above listed convictions, problems that he had with his correctional programming and family and social issues that pertained to his criminality.

¶ 39. In his postconviction motion, Tiepelman challenged the sentence because of the circuit court's reference to an inaccurate number of Tiepelman's convictions. Tiepelman alleged that:

> Nothing in the record, including the presentence report (PSI), supports the court's statement that Mr. Tiepelman had "something over twenty prior convic-

201

tions at the time of the commission of this offense back in 1995." Although the PSI lists some twenty prior charges, it shows only nine of the charges resulted in criminal convictions. . . .

The court sentenced Mr. Tiepelman with the belief that his prior record consisted of twice as many convictions than is correct. Moreover, the court's belief that he had been convicted of battery and various bond violations can only be characterized as aggravating, not mitigating, factors. The state cannot prove the error was harmless.

¶ 40. Because of Tiepelman's postconviction motion, the circuit court had the opportunity to review its sentencing decision, including its misstatements and the information the court relied on for the sentence it chose. The circuit court's statements are instructive:

In addressing the sentencing decision, in exercising the sentencing decision, in performing the sentencing function at that time, the Court addressed the three primary factors or characteristics in sentencing: the character, seriousness of the offense, the character of the offender, and the need for the protection of the public, and those points are separately addressed in the transcript.

In the analysis of the character of the offender, the Court did note 20 prior convictions which is concededly in error in that it's nine or ten, depending on how you want to count the read-in, and I don't really recall and I'm not suggesting in the record that that was miss-peaking on my part referring to the 20 entries or whether or not I was actually mistaken as to the number of convictions at that point. I will note that neither M[r]. Tiepelman [n]or Ms. Oliveto spoke up and said that's not correct. So how that was understood at the time that's not clear either, but it is clear, first of all, that the sentence was, sentencing determination was

based on factors that went considerably beyond whether there was ten or twenty convictions and addressed the other matters which are appropriate to being addressed in sentencing, and the transcript of course sets forth exactly what was discussed at that point.

The behavior both before and since the original probation disposition was addressed particularly . . . in the arguments and . . . in my sentencing comments I say, ". . . I am sentencing him in light of his conduct since the offense. I'm also primarily sentencing him for the flat out theft that got him convicted."

So I believe that the defense in its argument in support of its motion wants to focus upon the ten versus twenty convictions and not consider the other factors that are appropriate to a sentencing determination, which were specifically addressed and weighed as well . . . [t]hese [other charges] apparently were dismissed for whatever reason but the record reflects that many of them were dismissed as part of a disposition which occurred on a couple of different occasions, but the conduct itself was conceded both at the time of the original sentencing and again today, and all of that conduct, even if the defendant was not specifically convicted for those offenses, is certainly appropriately considered by the Court. So the defense, as I say, in its argument focuses in and accentuates the 10 versus 20, or nine and a read-in versus 20, without regard to the other issues.

I believe, frankly, there is an issue as to whether or not this information was inaccurate in any substantial sense. . . . I simply do not believe that the, whether it's ten or twenty, when the conduct is conceded and in light of the other—well, whether it's 10 or 20, when the conduct's conceded amounts to inaccuracy in any material sense and, secondly, in light of the other factors which the court analyzed in length in its sentencing

decision, I do not believe that the defense has established by clear and convincing evidence either the inaccuracy or that it was relied on in imposing the sentence so the motion to vacate the sentence and resentence Mr. Tiepelman is denied.

## II. DISCUSSION

### A. Standard of Review

¶ 41. Sentencing is a decision within the discretion of the circuit court and appellate review will set aside a sentence only when there has been an erroneous exercise of discretion. *State v. Patino,* 177 Wis. 2d 348, 384, 502 N.W.2d 601 (Ct. App. 1993). In reviewing whether a circuit court has misused its sentencing discretion, we presume that the circuit court acted reasonably. *State v. J.E.B.,* 161 Wis. 2d 655, 661, 469 N.W.2d 192 (Ct. App. 1991). A sentencing court misuses its discretion, as a matter of law, when it sentences in contravention of a defendant's due process rights. *See State v. Coolidge,* 173 Wis. 2d 783, 788–89, 496 N.W.2d 701 (Ct. App. 1993). We review this constitutional issue independently. *Id.*

### B. Sentencing

¶ 42. When sentencing a defendant, the circuit court considers three main factors: (1) the seriousness of the offense of conviction, (2) the character of the defendant and (3) the public's need for protection from the defendant. *State v. Larsen,* 141 Wis. 2d 412, 427, 415 N.W.2d 535 (Ct. App. 1987). It is permissible for the sentencing court to consider criminal conduct that has not resulted in a conviction, in evaluating a defendant's character. *State v. McQuay,* 154 Wis. 2d 116, 126, 452 N.W.2d 377 (1990). However, a sentence may not be

based on the violation of a constitutional right. *J.E.B.*, 161 Wis. 2d at 663. A convicted defendant has a due process right to be sentenced based on accurate information. *Townsend v. Burke,* 334 U.S. 736, 740–41 (1948).

C. Actual Reliance

¶ 43. I agree with the majority opinion's conclusion that a defendant who claims that inaccurate information was used in his sentencing must prove by clear and convincing evidence that: (1) the information was inaccurate and (2) the circuit court actually relied on inaccurate information. Majority op., ¶ 26. Once a defendant does so, the burden shifts to the State to show that the error was harmless. *State v. Marsh,* 177 Wis. 2d 643, 653, 502 N.W.2d 899 (Ct. App. 1993). A convicted defendant is not required to prove that the circuit court prejudicially relied on inaccurate information. Majority op., ¶ 27.

¶ 44. Here, the circuit court's commentary about Tiepelman's overall pattern of behavior, the nature of the crime, Tiepelman's conduct since the commission of the crimes for which he was being sentenced and his credibility before the court were not erroneous factual statements, but rather, they were taken from the PSI and are not challenged in this review. Furthermore, at the hearing on Tiepelman's postconviction motion, the circuit court was very direct in explaining that it did not rely on Tiepelman having twenty convictions when it made its sentencing decision. The circuit court said:

> In the analysis of the character of the offender, the Court did note 20 prior convictions which is concededly in error in that it's nine or ten, depending on how you want to count the read-in . . . .
>
> The behavior both before and since the original

probation disposition was addressed particularly . . . in the arguments and . . . in my sentencing comments I say, ". . . I am sentencing him in light of his conduct since the offense. I'm also primarily sentencing him for the flat out theft that got him convicted."

[I]n light of the other factors which the court analyzed in length in its sentencing decision, I do not believe that the defense has established by clear and convincing evidence either the inaccuracy or that it was relied on in imposing the sentence so the motion to vacate the sentence and resentence Mr. Tiepelman is denied.

¶ 45. In so explaining, the circuit court said it did not actually rely on Tiepelman having twenty convictions, but rather, the court was concerned with his character as evidenced by his continuing criminal conduct. The circuit court was in the best position to evaluate its sentencing decision and what it actually relied upon. Based on my review of the information in the record, unlike the majority, I am satisfied that Tiepelman has not met his burden of showing, by clear and convincing evidence, that the circuit court actually relied on inaccurate information in reaching its sentencing decision.

D. Harmless Error

¶ 46. However, even if I were to assume actual reliance on inaccurate information, arguendo, I would continue to dissent from the majority opinion's assumption that the error was not harmless, which conclusion is based on the stipulation of the parties rather than on an application of the law to the record before us.

¶ 47. We have explained that for an error to affect the substantial rights of a party and warrant reversal, it must be clear beyond a reasonable doubt that the result

of the proceeding would not have been the same absent the error. *State v. Harvey,* 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 647 N.W.2d 189. This is a test that we have concluded is based on *Chapman v. California,* 386 U.S. 18 (1967). *Harvey,* 254 Wis. 2d 442, ¶¶ 44–46. It is also asserted that the test was established in *Neder v. United States,* 527 U.S. 1 (1999). *Harvey,* 254 Wis. 2d 442, ¶ 51 (Crooks, J., concurring). We have earlier articulated the test for harmless error as "whether there is a reasonable possibility that the error contributed" to the outcome. *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). We explained that a "reasonable possibility" under Wisconsin law is the equivalent of "reasonable probability" in United States Supreme Court parlance. *Harvey,* 254 Wis. 2d 442, ¶ 41. The specific wording of the test has been a matter of dispute on this court for some time. *Id.,* ¶ 52 n.1, (Crooks, J., concurring).

¶ 48. I note that the doctrine of harmless error applies to sentencing decisions. *Marsh,* 177 Wis. 2d at 653–55. Wisconsin courts have applied harmless error in a sentencing context, basing their analyses on whether the alleged errors affected the ultimate sentence that was imposed.[2] *State v. Anderson,* 222 Wis. 2d 403, 410–411, 588 N.W.2d 75 (Ct. App. 1998) (concluding that the circuit court relied on errors in the PSI that the State had not proved there was "no reasonable probability that the error contributed to the outcome"); *Marsh,* 177 Wis. 2d at 653–55 (concluding that the circuit court's forceful assertion that the inaccurate

---

[2] Federal courts have also applied harmless error analysis to sentencing decisions. *See United States v. Burke,* 425 F.3d 400, 417 (7th Cir. 2005); *United States v. Paulus,* 419 F.3d 693, 699–700 (7th Cir. 2005); *United States v. Williams,* 298 F.3d 688, 693 (7th Cir. 2002); *United States v. Smith,* 218 F.3d 777, 783 (7th Cir. 2000).

information did not affect its sentencing decision was dispositive in determining that the claimed error was harmless).

¶ 49. Although reliance on inaccurate information in sentencing can constitute a due process violation, the presence of inaccurate information at sentencing does not fall within the limited class of errors that are "so intrinsically harmful as to require automatic reversal . . . without regard to their effect on the outcome." *See Harvey,* 254 Wis. 2d 442, ¶ 37 (citing *Neder,* 527 U.S. at 7). In other words, sentencing where inaccurate information has been presented is not a "structural error," one that automatically warrants reversal without regard to the influence of the error on the process.[3]

¶ 50. However, based on my review of the statements of the circuit court presented by the record of Tiepelman's sentencing and the hearing on his postconviction motion, I conclude it does not matter which test for harmless error is used, the result is the same: it is clear beyond a reasonable doubt that the circuit court would have given Tiepelman the same sentence if the erroneous reference to twenty convictions had not been a part of the court's narration at sentencing. Therefore, Tiepelman suffered no prejudice because his substantial right to be sentenced based on correct information

---

[3] Structural errors are "defect[s] affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *State v. Harvey,* 2002 WI 93, ¶ 37, 254 Wis. 2d 442, 647 N.W.2d 189 (citation omitted). As we noted in *Harvey,* if the defendant had counsel and an impartial adjudicator, "there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis." *Id.* (citing *Rose v. Clark,* 478 U.S. 570, 579 (1986)). We identified errors in this limited class in *Harvey. Harvey,* 254 Wis. 2d 442, ¶ 37.

was not affected. When an error is committed that is not structural error and the defendant suffers no prejudice, the error is harmless. *Koffman v. Leichtfuss,* 2001 WI 111, ¶ 51, 246 Wis. 2d 31, 630 N.W.2d 201.

¶ 51. In addition, there is no basis for accepting the assistant attorney general's assertion that harmless error has not been adequately briefed. Majority op., ¶ 30. The State argued below that if there were error, it was harmless, and it briefed the harmless error issue for this court. See State's brief, pp. 17–22. Tiepelman anticipated the State's harmless error argument in his brief in chief, pp. 24–29, and he responded to the State's argument in his brief in reply, Tiepelman's brief in reply, pp. 3–6. A harmless error analysis can be done on the record before us and the briefing of the parties.

¶ 52. The State's brief relied heavily on the sentencing transcript and the court's explanation of the sentence at the hearing on Tiepelman's postconviction motion, as quoted at length above. I agree with the State's brief that "the transcript all but . . . speaks for itself" as to the harmlessness of the court's misstatement of fact. I have examined the sentencing and conclude that if the court actually relied on its statement that Tiepelman had twenty convictions, it did not do so to Tiepelman's prejudice and therefore any error was harmless. I come to this conclusion because of the direct and clear statements from the circuit court at the sentencing:

> [T]o me the most significant factor is Mr. Tiepelman's character and the ongoing danger he presents to the public, as well as the seriousness of the offense. I am sentencing him in light of his conduct since the offense. . . . I'm also primarily sentencing him for the flat out theft that got him convicted.

¶ 53. Furthermore, the legislature has directed the appellate courts of Wisconsin not to overturn earlier court decisions if the claimed of error is harmless. Wis. Stat. § 805.18(1). Section 805.18(1) provides:

> The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.[4]

Section 805.18(1) is made applicable to criminal cases by Wis. Stat. § 972.11(1). While I agree with the majority opinion that a convicted defendant has a due process right to be sentenced based on accurate information, majority op., ¶ 10, we are not free to ignore Wisconsin statutes for the convenience of the parties. *See Harvey,* 254 Wis. 2d 442, ¶ 39. Accordingly, unless the alleged error was prejudicial to Tiepelman, the sentencing cannot be set aside.

¶ 54. And finally, the decision of the majority also contravenes the spirit, if not the letter, of Wis. Stat. § 809.18. Section 809.18 provides:

> The dismissal of an appeal by the appellant or by agreement of the parties or their counsel does not affect the status of a lower court decision . . . .

¶ 55. The stipulation that the majority opinion accepts does not result in a complete dismissal of the proceedings before us because we clarify that the prejudicial reliance test the court of appeals applied is not

---

[4] We note that the federal harmless error rule, Rule 52(a) of the Federal Rules of Criminal Procedure, contains substantially similar language, and that federal harmless error review also addresses the protection of "substantial rights." *See Harvey,* 254 Wis. 2d 442, ¶ 36 (discussing *Neder v. United States,* 527 U.S. 1, 7 (1999)).

the correct test. Majority op., ¶ 2. However, it does result in a partial dismissal of the review because the majority opinion overturns the sentence of the circuit court, which was affirmed by the court of appeals. The majority opinion does so based solely on the stipulation of the parties, which requested this court to assume both actual reliance on inaccurate information by the circuit court and that such error was not harmless. When the majority opinion permits two private parties to overturn the decisions of two constitutionally established courts, it operates outside of its statutory and constitutional authority.

## III. CONCLUSION

¶ 56. In sum, while I agree with the majority opinion's conclusion that actual reliance is the test to be met by a defendant in a challenge to a sentence that was allegedly based on inaccurate information, I disagree with the majority opinion's sweeping acceptance of the parties' stipulations that result in reversal of the sentencing decision of the circuit court, which decision was affirmed by the court of appeals. My application of the test of actual reliance to the record and to the arguments provided in the parties' briefs leads me to conclude that Tiepelman has not shown by clear and convincing evidence that the circuit court actually relied on inaccurate information. Furthermore, even if I were to assume, arguendo, that the circuit court did so rely, I conclude that such an error was proved to be harmless beyond a reasonable doubt. Therefore, I would affirm the court of appeals.

¶ 57. For the foregoing reasons, I respectfully dissent from the majority opinion.