COURT OF APPEALS
DECISION
DATED AND FILED

April 19, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP995-CR**

Cir. Ct. No. 2020CF105

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ISAAC M. GABLER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Calumet County: JEFFREY S. FROEHLICH, Judge. *Affirmed*.

¶1 NEUBAUER, J.[1] Isaac M. Gabler appeals from a judgment of conviction entered after he pled no contest to three misdemeanors and from an

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

order denying his postconviction motion. Gabler does not challenge his underlying convictions for disorderly conduct and violation of a temporary restraining order. Gabler does contend, however, that the circuit court erroneously exercised its discretion in denying his request that his convictions be expunged. More specifically, he argues that the court's decision rests on inaccurate information. For the reasons explained below, this court rejects Gabler's arguments and affirms the judgment and order.

## BACKGROUND

¶2 The facts relevant to this appeal arise out of several actions commenced against Gabler in 2020. Judge Jeffrey S. Froehlich presided over all of the legal proceedings and issued all of the orders discussed in this opinion.

*The Temporary Restraining Orders and Harassment Injunction*

¶3 On April 8, 2020, Richard G., the father of eighteen-year-old Evelyn G.,[2] filed a petition on Evelyn's behalf seeking a temporary restraining order (TRO) and injunction against Gabler pursuant to WIS. STAT. § 813.125. Richard filed the petition three days after Gabler, a former high school classmate of Evelyn, came to Evelyn's home and told Richard "he wanted to take [Evelyn] so she could take his virginity." According to police, Richard "told [Gabler] it would be best for him to leave," at which point Gabler said, "[a]re you sure you want to do that," "slowly walk[ed] back into his vehicle," and "continued to stare at [Richard] with a smile on his face." Richard told police that Gabler left but

---

[2] This court refers to the victim and her father by pseudonyms consistent with the policy set forth in WIS. STAT. RULE 809.86(1).

"drove past the residence a short while later … again staring at [Richard]." Richard incorrectly listed Evelyn's date of birth on the petition, misidentifying her as a minor.

¶4     The circuit court held a hearing on the petition on April 22, 2020. Evelyn and her parents were the only persons to appear at the hearing, which was held telephonically due to the COVID-19 pandemic. After briefly questioning Richard and noting the discrepancy concerning Evelyn's date of birth, the court granted the TRO but directed that Evelyn sign and file an amended petition correctly listing her birth date. Evelyn filed an amended petition later that day.

¶5     On April 29, 2020, the circuit court held a telephone hearing on the amended petition. In addition to Evelyn and her parents, Gabler and his attorney appeared via telephone.[3] Gabler's attorney informed the court that Gabler had been in outpatient treatment for his mental health issues, that he was taking medication, and that he had "stabilized." The attorney described him as "competent and able to communicate" but acknowledged that "some other people involved in his life, they disagree with that at this time." She asked the court to extend the TRO for six months. Gabler and Evelyn agreed to this arrangement. The court warned Gabler that "violations of [the TRO] would [be grounds for] a mandatory arrest," to which Gabler responded, "[o]kay." Later that day, the circuit court entered an amended TRO requiring Gabler to "cease or avoid the harassment of [Evelyn]," stay away from her residence, and "avoid contact that harasses or intimidates" her.

---

[3] The same attorney represented Gabler in the injunction action and in this action through Gabler's plea and sentencing.

¶6 On the following evening, April 30, 2020, Gabler went to Evelyn's house and knocked on the front door. Evelyn's father contacted the sheriff's office. Gabler told the deputy who responded to the house that "he was aware that he had a restraining order prohibiting him from being at [Evelyn's] residence or making contact with [her]" and that he was "[there] to take [Evelyn]'s virginity."

¶7 Gabler was arrested and taken to the Winnebago Mental Health Institute where he was detained emergently under WIS. STAT. ch. 51. In a letter dated May 4, 2020, Gabler's attorney informed the circuit court that Gabler "[was] currently in a secure placement outside of Calumet County" and that because of "circumstances that [had] occurred since the [April 29] hearing," she could not obtain Gabler's signature on a form acknowledging that he had been served a copy of the amended TRO. The attorney advised that Evelyn "[would] need to proceed with having the necessary paperwork served on [Gabler]." Two days later, a deputy sheriff effected substituted service of the amended TRO and associated papers on Gabler by delivering them to a staff member at the Winnebago Mental Health Institute.

¶8 Gabler was subsequently examined by two psychiatrists, each of whom concluded that Gabler met the criteria for continued involuntary commitment and medication under WIS. STAT. ch. 51—he was mentally ill, a proper candidate for treatment, and a danger to himself or others.

¶9 On May 14, 2020, the circuit court held a hearing on Evelyn's request for an injunction. Minutes from the hearing indicate that Gabler did not appear but that his attorney asked to proceed because Gabler "[was] not competent to proceed and could not understand what happens today." After hearing testimony from Evelyn and her father, the court found "[r]easonable grounds to

believe" that Gabler had engaged in harassing and intimidating behavior towards Evelyn and granted an injunction prohibiting him from engaging in any harassing or intimidating conduct towards her for four years.

*The Criminal Proceeding and Gabler's Expungement Request*

¶10     Following Gabler's arrest on April 30, 2020, the State charged him with felony stalking and three misdemeanors—a violation of the TRO and two counts of disorderly conduct. On May 12, the circuit court ordered a competency examination.

¶11     Eight days later, on May 20, 2020, the State filed a report prepared by Deborah L. Fischer, Ph.D., a licensed psychologist at the Winnebago Mental Health Institute, in which she diagnosed Gabler with "unspecified schizophrenia spectrum and other psychotic disorder." In the report, Fischer wrote that Gabler had "exhibited several different fixed delusional beliefs" since the end of March 2020, "lack[ed] insight into his illegal and inappropriate behaviors and also exhibit[ed] poor judgment," and "display[ed] a tangential and illogical thought process." Based on her evaluation of Gabler, Fischer opined that he was not competent to proceed in the criminal case because he "lack[ed] substantial mental capacity to understand the proceedings and assist in his own defense." *See* WIS. STAT. § 971.13(1). The circuit court suspended proceedings in the criminal case and ordered Gabler to continue inpatient treatment at the Winnebago Mental Health Institute.

¶12     In a subsequent report dated June 29, 2020, Fischer wrote that "[w]ith medication, Mr. Gabler has exhibited improvement in his depressive symptoms and is no longer experiencing delusions or hallucinations. His thought process is logical and linear, his judgment is improved, his insight is improving,

5

and he is grounded in reality." She diagnosed Gabler with "Major Depressive Disorder, early onset, with psychotic features," "Generalized Anxiety Disorder," and "Cannabis Use Disorder," but opined that he was competent to proceed in his criminal case.

¶13 The circuit court found Gabler to be competent and he ultimately agreed to plead no contest to the misdemeanors in exchange for the State's agreement to have the felony count dismissed and read in at sentencing. On September 21, 2020, the circuit court accepted Gabler's plea, withheld sentence, and imposed a two-year term of probation. The court also denied Gabler's request that his convictions be expunged after the end of his probation term because he "ha[d] received the significant benefit of having the felony charge dismissed and read in, and … there needs to be some information available to the public given the events that took place here." Gabler's attorney acknowledged "the Court's desire that there be something on the record" but asked the court to reconsider, noting that "the restraining order … will always show up on a background check, … and that's available for the public to see." The court declined to do so because it perceived "a significant difference between just knowing that an order was entered at some point in the past and knowing that that order was violated."

¶14 After the plea and sentencing hearing, Gabler's attorney filed a letter "to clarify" a reference the State had made to "schizophrenia … manifest[ing] itself when a person is [Gabler]'s age." The attorney wrote that Gabler's "current diagnosis is major depressive disorder with psychotic features. He is not diagnosed with schizophrenia." She asked that "[i]f this additional information would change the [circuit c]ourt's opinion about granting expungement, … the [c]ourt direct it to be noted on the Judgment of Conviction." The court responded

6

in a letter to Gabler's attorney dated October 7, 2020, indicating that no change would be made:

> The [c]ourt recognizes that Mr. Gabler's mental health issues were a significant part of his case. The [c]ourt did not form its opinion denying expungement based upon any particular mental health diagnosis nor [the State's] comments that your client may be suffering from schizophrenia. The [c]ourt's concern was that while the public might have been able to ascertain that Mr. Gabler had an injunction ordered against him that information was not sufficient. The [c]ourt believes there is a vast difference between having an injunction ordered against an individual and knowing that the individual violated that injunction. For public safety reasons the [c]ourt believed it was important that that information be accessible.

*The Harassment Injunction is Vacated*

¶15    In March 2021, Gabler moved, pursuant to WIS. STAT. § 806.07, to vacate the harassment injunction. After receiving no response from Evelyn, the circuit court issued an order in October 2021 granting the motion. The court made two findings in support of its decision. First, the court found that it "did not have competency to grant either the temporary restraining order or injunction … because the original restraining order was improperly granted as [Evelyn] was a competent adult at the time her father pursued the petition on her behalf." The court stated that the petition "did not comply with the statutory requirements of [WIS. STAT. §] 813.125" and should have been dismissed because Evelyn's father had incorrectly identified her as a minor. Second, the court found that the injunction was invalid because "Gabler was not present at the injunction hearing," and neither he nor his attorney could waive his appearance because he was committed civilly and "was indisputably incompetent" at that time.

*The Circuit Court Denies Gabler's Postconviction Motion*

¶16 In February 2022, Gabler filed a postconviction motion seeking to reopen his sentencing hearing on the issue of expungement. Citing **State v. Tiepelman**, 2006 WI 66, 291 Wis. 2d 179, 717 N.W.2d 1, Gabler argued that because the circuit court had determined that the initial TRO should not have been entered against him and had vacated the harassment injunction, the court had "unknowingly considered inaccurate information about the nature of the supposed violation of the temporary restraining order and the level of culpability [Gabler] had in attempting contact with [Evelyn] on April 30, 2020" when it declined to order expungement at Gabler's sentencing hearing. Gabler also asserted that his attorney in the injunction proceeding had rendered ineffective assistance in failing to request that the initial TRO be dismissed, a failure that led the court to deny expungement based on "its wrongly held belief that … Gabler knowingly violated the temporary restraining order … and that by doing so, created such a set of circumstances where the public would be harmed if they were denied access to this information."

¶17 The circuit court denied Gabler's motion, explaining that its decision to not order expungement was based on the fact "that there was a temporary restraining order in place and that the order had been violated," not whether Gabler had knowingly or unknowingly violated it. The court emphasized its belief that it "is important for the public to know, so that members of the public are 'on notice' and can take measures to protect themselves and others, … that there was a temporary restraining order in place and that the order had been violated." Gabler appeals.

**DISCUSSION**

¶18    WISCONSIN STAT. § 973.015(1m)(a)1. empowers circuit courts to expunge certain criminal convictions committed by persons under the age of twenty-five "if the court determines the [offender] will benefit and society will not be harmed by this disposition." The statute enables a court to "provide a break to young offenders who demonstrate the ability to comply with the law" and "shield [them] from some of the harsh consequences of criminal convictions." *State v. Leitner*, 2002 WI 77, ¶38, 253 Wis. 2d 449, 646 N.W.2d 341 (citation omitted). Whether to order expungement is reserved to the circuit court's discretion, which means this court's review is deferential. *State v. Helmbrecht*, 2017 WI App 5, ¶8, 373 Wis. 2d 203, 891 N.W.2d 412 (2016). The circuit court must "set forth … the facts it considered and the rationale underlying its decision." *Id.*, ¶12. This court will uphold a circuit court's decision on expungement so long as "it relies on relevant facts in the record and applies a proper legal standard to reach a reasonable decision." *Id.*, ¶8 (quoting *State v. Thiel*, 2012 WI App 48, ¶6, 340 Wis. 2d 654, 813 N.W.2d 709).

¶19    Gabler argues that the circuit court erroneously exercised its discretion because it relied on inaccurate information in denying his request for expungement. He relies on a line of cases recognizing that a defendant has a constitutional right to be sentenced on the basis of accurate information. *See, e.g.*, *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Tiepelman*, 291 Wis. 2d 179, ¶9. The State acknowledges that a court erroneously exercises its discretion if it denies expungement based on an error of fact. Gabler bears the burden of showing by clear and convincing evidence both that inaccurate information was before the court and that the court actually relied on it in the sentencing. *See Tiepelman*, 291 Wis. 2d 179, ¶26; *State v. Coffee*, 2020 WI 1, ¶38, 389 Wis. 2d 627, 937 N.W.2d

9

579. Whether Gabler was denied expungement in violation of his constitutional rights is a question this court reviews de novo. *See Coffee*, 389 Wis. 2d 627, ¶17.

¶20 Gabler argues first that the circuit court based its expungement decision on the incorrect premise that he violated the harassment injunction when in fact he pled no contest to violating the amended TRO. The record does not show that the court relied on inaccurate information. The court referred to Gabler having violated "an injunction" in its October 7, 2020 letter to Gabler's counsel, which was dated several weeks *after* Gabler's sentencing hearing. When the court sentenced Gabler, however, it did not refer to the injunction, but rather to an "order." At the sentencing hearing, the court explained that it was denying Gabler's request for expungement because it believed "there need[ed] to be some information available to the public given the events that took place here." When Gabler's counsel reminded the court that the restraining order would be "available for the public to see," the court clarified that it believed the public needed to be aware Gabler had violated the *order*: "Well, I appreciate that that record is still out there, but there is a significant difference between just knowing that an order was entered at some point in the past and knowing that that order was violated." The court twice referred to an "order" in its comments, clearly referring to the violation of the amended TRO for which Gabler was convicted and sentenced.

¶21 This court agrees with the State that the circuit court appears to have simply misdescribed the amended TRO as an "injunction" in its October 7 letter. That slip of the tongue is not enough to show that the circuit court was under the mistaken impression that Gabler had violated the harassment injunction when it denied expungement. To the contrary, the circuit court's specific references to an "order" in explaining its expungement decision confirm it did not deny Gabler's request on the basis of inaccurate information.

¶22     Gabler next argues that he did not know the amended TRO had been issued when he went to Evelyn's house on April 30, 2020, because he had not been personally served with it and "was incompetent as a matter of law at the time" it was issued. On the latter point, Gabler notes the "substantial steps" his family took to get him mental health treatment in the weeks before he violated the amended TRO and the findings of two psychiatrists days after his arrest that he was mentally ill and should be involuntarily committed and medicated under WIS. STAT. ch. 51. Gabler questions how expungement of his conviction for violating an order whose existence he was not aware of could be harmful to society.

¶23     This argument is not sufficient to show that the circuit court actually relied on inaccurate information denying expungement. First, the record demonstrates Gabler knew about the amended TRO when he went to Evelyn's house on April 30, 2020, even though he had not been personally served with it and was struggling with mental illness. The court entered the amended TRO following a hearing held on April 29, 2020. Gabler appeared telephonically at the hearing and, in response to questions from the court, acknowledged that he was willing to extend the terms of the initial TRO for six months and that he knew he would have to follow them. According to the criminal complaint, when the police spoke to Gabler outside Evelyn's house the following evening, he "stated he was aware of the restraining order."[4]

¶24     Gabler later pled no contest to, and was found guilty of, violating the amended TRO. During the plea colloquy, Gabler acknowledged that the State

---

[4] At the plea hearing, Gabler's attorney did not object when asked if the circuit court could use the facts alleged in the complaint as the basis for Gabler's plea.

would have to prove that he "knew that the temporary restraining order had been issued" and that his "actions were going to violate its terms." He acknowledged that the court would find him guilty of violating the amended TRO if he pleaded no contest. The court found that Gabler "[understood] the nature of these proceedings and the effect of [his plea]." Gabler did not plead not guilty by reason of mental disease or defect and has not moved to withdraw his plea. In sum, Gabler has not established his claim of lack of knowledge by clear and convincing evidence.

¶25    In considering expungement, a circuit court must assess whether the defendant will benefit and whether society will be harmed. *See* WIS. STAT. § 973.015(1m)(a)1. In denying Gabler's requests for expungement, the circuit court consistently cited harm to the public as the reason for its decision. In the circuit court's view, society would be harmed if records reflecting Gabler's violation of the amended TRO were expunged. Gabler challenges this reasoning by noting that records related to the amended TRO, Gabler's violation of it, and the harassment injunction can be accessed through the Circuit Court Access Program (CCAP) website regardless of whether his conviction is expunged. Assuming the website has displayed and will indefinitely continue to display this information, the circuit court could nonetheless reasonably conclude that expungement would deprive the community of one way to learn that Gabler had violated the amended TRO. Its conclusion rests on the application of the correct law to the relevant facts and is one a reasonable judge could make. Thus, Gabler has not carried his burden of showing an erroneous exercise of discretion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.