**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 14, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP1844-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2015CF805

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MARK A. MAYO,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County:  MITCHELL J. METROPULOS, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Mark Mayo appeals a judgment, entered upon his no-contest pleas, convicting him of eight counts of capturing an image of nudity

without consent, where the person depicted has a reasonable expectation of privacy. Mayo also appeals the order denying his postconviction motion for resentencing. Mayo argues that he is entitled to resentencing because his sentence was based on inaccurate information. We reject Mayo's arguments and affirm the judgment and order.

## BACKGROUND

¶2 The State initially charged Mayo with one count of capturing an image of nudity without consent and twenty counts of possessing child pornography. The charges arose from allegations that Mayo had downloaded at least twenty images of child pornography to his laptop. The complaint further alleged that Mayo set up hidden cameras in his bathroom to secretly record "Julie"[1]—a foster child whom he adopted—using the toilet. In addition to Julie, the State believed it identified three other victims in the recordings, including "Rachel"—a foster child who, along with her sisters, briefly lived at the Mayo home.[2] A third amended Information did not include the possession of child pornography counts, but it alleged eight counts of capturing an image of nudity without consent. Mayo entered no-contest pleas to all of the eight alleged offenses.

¶3 At sentencing, Rachel's mother discussed the impact of the crimes, noting "[t]he fear, the horror, the shame, and the hopelessness" her family shared. She added that her family lost trust, security, and innocence that could not be

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2017-18), we use pseudonyms instead of the victims' names.

[2] The State also identified a grandchild of Mayo and a friend of Julie as victims.

replaced, emphasizing that Mayo was entrusted to protect and care for her children "at their most vulnerable, and they were instead violated." Rachel's mother further asked the court not to "unleash" Mayo into society without proper punishment. Similarly, Julie's victim impact statement explained that Mayo's crime negatively impacted everyone in her life and "is going to stay with [her] for the rest of [her] life." Julie added: "The part that hurts the most is that all of this was caused by someone so important to me and someone that said he would never do anything to hurt his family."

¶4 The State recommended a total sentence of four years of initial confinement and eight years of extended supervision. The State emphasized that Mayo was a foster parent entrusted with providing neglected and abused children a safe haven, yet he secretly recorded the victims "in the most private setting that you could imagine, on the toilet." The State recounted:

> What we found on his computer years later was that there were numerous different dates, numerous different victims, in these videos, and almost without fail, on every single day, you would see [Mayo] walking to the bathroom, he would sit on the toilet, he would reposition the camera, to make sure that it was recording what he wanted it to record. He would leave the bathroom, and a few minutes later a young child would walk in, and she would be exposed, they would be using the restroom, they would be doing private things that they wouldn't expect their loving foster parent to capture.

The State further recounted that it found videos capturing fourteen different dates and "six different victims" on Mayo's laptop.

¶5 Defense counsel asked the circuit court to follow the presentence investigation report writer's recommendation of probation with an imposed and stayed sentence. The court ultimately imposed consecutive sentences on two of

the counts, resulting in an aggregate seven-year term, consisting of three years' initial confinement and four years' extended supervision. With respect to the remaining six counts, the court withheld sentence and imposed a consecutive term of four years' probation. Mayo's postconviction motion for resentencing was denied after a hearing, and this appeal follows.

## DISCUSSION

¶6 Mayo contends he is entitled to resentencing because the circuit court relied on two pieces of inaccurate information when imposing his sentences. A defendant has a due process right to be sentenced on the basis of accurate information. *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether a defendant has been denied this right presents a constitutional issue that this court reviews independently. *Id.* A defendant who moves for resentencing on the ground that the circuit court relied on inaccurate information must establish that there was information before the sentencing court that was inaccurate and that the court actually relied on the inaccurate information. *Id.*, ¶31. "Whether the court 'actually relied' on the incorrect information at sentencing was based upon whether the court gave 'explicit attention' or 'specific consideration' to it, so that the misinformation 'formed part of the basis for the sentence.'" *Id.*, ¶14 (citation omitted).

¶7 Here, Mayo asserted that the prosecutor erroneously stated at sentencing that there were six different victims when, in fact, there were four. Mayo also asserted that the State misidentified Rachel as one of the victims. Although the State stipulated that this information was inaccurate, it argues that the sentencing court did not rely on any of the inaccuracies. We agree.

4

¶8      In pronouncing its sentence, the circuit court recognized that it needed to weigh a number of factors, including "the severity of the offenses, the impact the offenses have had on the victims," Mayo's prior record, his dangerousness to the public, his character, his rehabilitative needs, and his potential for rehabilitation.  *See generally **State v. Gallion***, 2004 WI 42, ¶¶39-46, 270 Wis. 2d 535, 678 N.W.2d 197.  The court acknowledged that Mayo had "basically no prior record," and that he was deemed a "low risk to reoffend."  The court noted, however, that it had to "also focus on the severity of these offenses as well as the impact on the victims, *not only on [Rachel,] that was presented here today through her mother*, but the other victims as well, including [Mayo's] own adopted daughter."  (Emphasis added.)

¶9      The circuit court added that what occurred here was a "well planned out series of crimes," that Mayo "placed a surveillance device in a bathroom with the intended purpose to record not only [Mayo]'s daughter, but the others, in a sexual way."  The court rejected Mayo's claim that he set up the recording device to investigate what he perceived to be "some type of medical condition" related to Julie.  The court stated that it was "deeply disturbing" that Mayo would take on "children that have, really, by their definition, trauma, because they're in need of foster parents, and that [Mayo] would further subject them to trauma."  The court further stated:

> These kids have been through enough and they want a safe home, and what you did to them was exasperate [sic] their trauma, and, *as [Rachel's mother] has pointed out*, likely created life-long issues for these children and for your own child.  This is a child who came to trust you, viewed you as someone that would protect her, and then you commit this assault on her.  I recognize it's not a physical assault, but the damage this type of behavior causes is profound and it's deep-seated and it will take a

> lifetime to deal with. … So the severity of the offense on the victims is profound and does warrant incarceration.

(Emphasis added.)

¶10 Mayo emphasizes that the circuit court made explicit reference to the statements made by Rachel's mother at sentencing. The court's comments as a whole, however, do not reflect actual reliance on the fact that Rachel, as opposed to another child, was one of Mayo's victims.[3] The court focused on the predatory and invasive nature of Mayo's behavior, noting that vulnerable minors were harmed by someone they trusted, and that Mayo was unwilling to acknowledge the "perversion" that caused him to engage in these behaviors. The court also expressed concern about the impact of Mayo's crimes on the victims as a whole, rather than on anything specific to Rachel. Mayo nevertheless asserts that Rachel's identity as a victim affected the sentences because it showed Mayo preyed upon foster children. Even though Rachel was misidentified as a victim, Julie had also been a foster child before her adoption by Mayo. Thus, we are not persuaded that Rachel's misidentification formed the basis for Mayo's sentences.

¶11 Although it is undisputed that the sentencing court never mentioned six victims, Mayo asserts that the court "presumably accepted as true that there were, in fact, six victims," as the court made "commentary on there being several victims." There were, however, several victims, and Mayo does not explain how the inaccurate information of the State's reference to six victims, as opposed to four actual victims, impacted the sentences. Ultimately, Mayo has failed to show that the sentencing court relied on any inaccurate information about the number or

---

[3] The identity of the fourth victim remains unknown.

identity of the victims when it sentenced Mayo. We therefore conclude the circuit court properly denied the motion for resentencing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).