COURT OF APPEALS
DECISION
DATED AND FILED

May 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP230-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF138

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

JACOB DANIEL VOGEL,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Buffalo County: RIAN RADTKE, Judge. *Reversed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State appeals from an order granting Jacob Vogel's postconviction motion for resentencing. It claims that the circuit

court erred in concluding that Vogel had been sentenced based upon inaccurate information and an improper factor. We conclude that Vogel did not establish either claim by clear and convincing evidence. We therefore reverse the circuit court's order and reinstate the judgment of conviction.

## BACKGROUND

¶2  Vogel pled guilty to one count of first-degree sexual assault of a child under the age of thirteen and one count of child enticement. According to the criminal complaint, relatives of an eleven-year-old girl, Mary,[1] contacted authorities after discovering that Mary had been sending and receiving sexually explicit pictures and videos on her iPad. One of the videos showed Mary performing oral sex on a man later determined to be Vogel (although he had used an online alias).

¶3  Mary told investigators that a friend had showed her how to install apps called KIK and Flirt on her iPad, both of which allowed her to exchange texts and pictures with other people. Mary then exchanged sexually explicit pictures with Vogel through those apps, told him she was eighteen, and engaged in an online conversation about meeting Vogel and performing oral sex on him.

¶4  Vogel drove to Wisconsin from Minnesota, picked up Mary from her house in his truck, and drove to a location about a mile away. There, Vogel began to kiss and undress Mary, using Mary's iPad to record the encounter. When Vogel pushed his fingers into Mary's vagina, she told him she "no longer wanted to do

---

[1] This matter involves the victim of a crime. Pursuant to WIS. STAT. RULE 809.86(4) (2019-20), we use a pseudonym instead of the victim's name. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

this." Vogel told Mary that she was going to do it because he had driven that far. Vogel then forced Mary to perform oral sex on him and vaginally raped her. After dropping off Mary at her house, Vogel texted her that he "could tell [she] was young" during their earlier online exchanges.

¶5 According to the presentence investigation report (PSI), while Vogel was in custody, a fellow inmate reported that Vogel said he knew the victim was underage but that he thought she was in her teens. An FBI investigation revealed that Vogel had a history, over a period of several years, of meeting both males and females online for the purpose of sexual conduct, and that he was not selective about his sexual partners.

¶6 At Vogel's sentencing hearing, the circuit court asked the prosecutor to compare the severity of an offense of repeated sexual assault of a child by someone in a trusted relationship with the "obvious grooming and victimization" that occurred here. Both the prosecutor and defense counsel rebuffed the notion that Vogel had groomed Mary by being nice to her or starting off with ambiguous physical contact and then escalating. Later in the hearing, the court acknowledged that Vogel had been looking for any "hook up" online and that he had not been specifically seeking to have sex with a child. The court observed, however, that no one could look at the photographs Mary had sent Vogel prior to the offense and think that Mary was an adult. In subsequently summarizing why the court considered the offense "vicious and aggravated," the court cited "[t]he concealed identity, the grooming, the nature of the assault, the use of technology, the recording of the event, the vulnerability of the victim."

¶7 While discussing Vogel's character, the circuit court characterized "all this other stuff [about Vogel] hooking up with guys and the attempts to

3

conceal his internet use and everything like that" as "undesirable behavior" showing that what happened in this case "wasn't anything other than a planned action." The court further referred to Vogel's habit of soliciting anonymous sex on the internet as demonstrating "anti-social cognition" and "highly risky behavior."

¶8 Vogel filed a postconviction motion, alleging that the circuit court had violated his due process rights by relying on inaccurate information that Vogel had engaged in "grooming" behavior and by relying on an improper factor with regard to Vogel's sexual orientation. The State conceded that it would not be accurate to describe Vogel's conduct as "grooming" behavior. The State argued, however, that the court had not actually relied on that characterization or on Vogel's sexual orientation in determining Vogel's sentence. With a different judge presiding over the postconviction motion,[2] the court vacated the judgment of conviction and granted Vogel a resentencing hearing. The State appeals.

## DISCUSSION

### 1. Inaccurate Information

¶9 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. If a defendant can establish by clear and convincing evidence both that inaccurate information was presented at sentencing and that the

---

[2] The Honorable James Duvall presided over the original sentencing hearing and entered the judgment of conviction. The Honorable Rian Radtke presided over the postconviction hearing.

court actually relied upon the misinformation in reaching its determination, the burden shifts to the State to show that the error was harmless. *Id.*, ¶26.

¶10 This court will independently review a due process claim that a defendant has been sentenced based upon inaccurate information. *Id.*, ¶9. However, we will defer to any credibility determinations or factual findings underlying the circuit court's decision on a constitutional issue. *See Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980) (regarding review of credibility determinations); *see also Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643-44, 340 N.W.2d 575 (Ct. App. 1983) (regarding review of factual findings).

¶11 The State first argues that neither the parties nor the PSI *presented* the circuit court with inaccurate information. To the contrary, both the prosecutor and defense counsel argued to the court that this was *not* a grooming case. We agree that neither the parties nor the PSI provided the court with inaccurate information. Rather, it appears that the court's use of the word "grooming" may have reflected its own misunderstanding of how that term is generally used.

¶12 We further agree with the State that the circuit court's use of an inaccurate term to characterize Vogel's behavior was insufficient by itself to establish actual reliance on inaccurate information. Actual reliance requires a showing that the court gave explicit attention or consideration to inaccurate information, such that it "formed part of the basis for the sentence." *Tiepelman*, 291 Wis. 2d 179, ¶14 (citation omitted).

¶13 Here, the circuit court's discussion in its entirety shows that the court had an accurate understanding of the underlying facts, regardless of the

"grooming" term it mistakenly used to characterize them.[3]  In particular, the court explicitly acknowledged that Vogel "was not particularly looking for a child" but, rather, he was willing to hook up with anyone regardless of the victim's obvious underage status.  The court further recognized the vicious and aggravated nature of the crime.  The court then focused heavily on the respective ages of Vogel and the victim when determining the appropriate length of the sentences.

¶14    In sum, Vogel has not demonstrated by clear and convincing evidence that any inaccurate belief by the circuit court that Vogel had specifically targeted the victim because of her age or "groomed" her with gifts or other nice behavior formed part of the basis for Vogel's sentences.

## 2.  Improper Factor

¶15    We review sentencing decisions under the erroneous exercise of discretion standard.  *State v. Alexander*, 2015 WI 6, ¶¶16-17, 360 Wis. 2d 292, 858 N.W.2d 662.  A circuit court erroneously exercises its sentencing discretion when it "actually relies on clearly irrelevant or improper factors."  *Id.*, ¶17 (citation omitted).  To establish error, a defendant must prove by clear and convincing evidence both that a factor was improper and that the court actually relied upon it.  *State v. Williams*, 2018 WI 59, ¶45, 381 Wis. 2d 661, 912 N.W.2d 373.

---

[3] "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011).

¶16 Here, the parties agree that discrimination based upon gender or sexual orientation constitutes an improper sentencing factor. *See id.*, ¶46. They disagree, however, whether Vogel demonstrated by clear and convincing evidence that the circuit court actually relied upon Vogel's sexual orientation at sentencing.

¶17 We conclude that Vogel has failed to demonstrate that the circuit court discriminated against him based upon his sexual orientation. The court's comments about Vogel hooking up with guys and attempting to conceal his identity online can be fairly interpreted as referring to Vogel's history of indiscriminately engaging in sex with anonymous partners of either gender as being highly risky, rather than being negatively focused upon his interactions with men in particular. That conduct bore a nexus to the charged crime—which involved having sex with a minor whom Vogel met by using an alias on the internet—as well as Vogel's risk of reoffending. In other words, it was the indiscriminate and anonymous nature of Vogel's sexual conduct, not Vogel's sexual orientation, that was of concern to the court. We therefore reverse the court's order granting Vogel a resentencing hearing, and reinstate the judgment of conviction.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.