**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 5, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP184-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2018CF8

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JAMES B. LUSSIER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Iron County:   PATRICK J. MADDEN and ANTHONY J. STELLA, JR., Judges. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  James Lussier appeals a judgment convicting him of one count of felony murder and two counts of harboring or aiding a felon, all counts as a party to the crime.  Lussier also appeals an order denying his postconviction motion for resentencing.[1]  Lussier contends that he is entitled to resentencing because the circuit court relied on inaccurate information when imposing his sentences.  We reject Lussier's arguments and affirm.

## BACKGROUND

¶2    On February 7, 2018, the State charged Lussier and four codefendants with two counts each in connection with the December 2017 death of Wayne Valliere: conspiracy to commit first-degree intentional homicide, as a party to the crime and while armed with a dangerous weapon; and hiding a corpse, as a party to the crime and as a repeater.  On the same day that the criminal complaint was filed in Iron County, a warrant was issued for Lussier's arrest.  Two days later—on February 9, 2018—Lussier attempted to turn himself in to the Vilas County Sheriff's Department.  Vilas County deputies turned Lussier away, however, and told him to go to Iron County.  Lussier did not do so, and he was subsequently arrested in Winnebago County on February 18, 2018.

¶3    Lussier and the State ultimately entered into a plea agreement.  The State agreed to amend the first-degree intentional homicide charge to felony murder and to amend the hiding a corpse charge to two counts of harboring or aiding a felon.  Lussier agreed to enter guilty pleas to all three of the amended

---

[1] The Hon. Patrick J. Madden presided over Lussier's sentencing hearing.  The Hon. Anthony J. Stella, Jr., entered the subsequent order denying Lussier's postconviction motion for resentencing.

charges, to provide truthful testimony regarding all of his codefendants, and to provide a full statement to law enforcement. The circuit court accepted Lussier's pleas and found him guilty of the amended charges.

¶4     During Lussier's sentencing hearing, the State erroneously stated three times that at the time Lussier committed the offenses charged in this case, he had a pending Vilas County charge for possession of methamphetamine. As reflected in the presentence investigation report (PSI), Lussier's pending Vilas County charge was actually for possession of narcotic drugs.

¶5     The State also addressed Lussier's cooperation with law enforcement during its sentencing remarks. The State acknowledged that Lussier was "entitled to credit for the cooperation that he has given in this case, and he has gotten some of that credit to start with, by reduction of his offenses from a Class A felony, a felony that would have required this Court to impose a life sentence." The State then argued that because of Lussier's cooperation, "something less than the maximum would certainly be appropriate." Nevertheless, the State asserted:

> [I]t's also important to note the Defendant had time to cooperate right away. He could have said something in December, he chose not to. He didn't come seeking out law enforcement, they had to go find him and seek him out. And only after [Valliere's] body had been found, and others were talking, and others were providing information, that the Defendant did come—not come forward, but responded when law enforcement came and talked him, and gave information. Only after they already knew of his involvement did he answer[] the questions of law enforcement.
>
> So, his cooperation certainly justifies something less than the maximum. It's justified a reduction in the charges from a Class A felony, but it certainly does not justify, and should not justify a short prison term, or probation in this case.

3

¶6      Ultimately, the State recommended that the circuit court sentence Lussier to fifteen years' initial confinement followed by fifteen years' extended supervision on the felony murder charge. On the two charges of harboring or aiding a felon, the State recommended that the court withhold sentence and impose a term of eight years' probation on each count, concurrent with each other but consecutive to Lussier's sentence on the felony murder charge. The court followed the State's sentencing recommendation.

¶7      Lussier subsequently filed a postconviction motion for resentencing, arguing that the circuit court had relied on inaccurate information when sentencing him. Specifically, Lussier cited the prosecutor's statements that: (1) Lussier had a pending Vilas County charge for possession of methamphetamine when he committed the offenses charged in this case; and (2) Lussier "didn't come seeking out law enforcement, they had to go find him and seek him out."

¶8      In response to Lussier's motion, the State conceded that the prosecutor's statements regarding the nature of the Vilas County charge were inaccurate. The State argued, however, that the circuit court did not actually rely on those statements when sentencing Lussier. The State further argued that the prosecutor's statement that Lussier did not "come seeking out law enforcement" was accurate, when read in context. Regardless, the State also argued that the court did not actually rely on that statement at sentencing.

¶9      The circuit court agreed with the State that the sentencing court did not rely on "the mistaken statements indicating [Lussier] was charged with meth possession, as opposed to narcotics possession." The court also agreed with the State that the prosecutor's comment about Lussier failing to seek out law

enforcement was not inaccurate. The court therefore denied Lussier's postconviction motion. Lussier now appeals.

## DISCUSSION

¶10 A criminal defendant has a constitutional due process right to be sentenced based upon accurate information. *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. "Whether a defendant has been denied this due process right is a constitutional issue that an appellate court reviews de novo."[2] *Id.*

¶11 A defendant seeking resentencing based upon inaccurate information must show both that the information in question was inaccurate and that the circuit court actually relied on the inaccurate information when imposing the defendant's sentence. *Id.*, ¶26. Inaccurate information refers to information that is "extensively and materially false." *See State v. Travis*, 2013 WI 38, ¶18, 347 Wis. 2d 142, 832 N.W.2d 491. Actual reliance, in turn, depends upon whether the sentencing court gave "explicit attention" or "specific consideration" to the inaccurate information, "so that the misinformation 'formed part of the basis for the sentence.'" *Tiepelman*, 291 Wis. 2d 179, ¶14 (citation omitted).

---

[2] On appeal, the State argues that Lussier forfeited his inaccurate information claims by failing to object to the allegedly inaccurate information during his sentencing hearing. We reject Lussier's inaccurate information claims on their merits. As such, we need not address the State's forfeiture argument. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

## I. Vilas County charge

¶12    Lussier first argues that he is entitled to resentencing based upon the prosecutor's repeated misstatement that Lussier had a pending Vilas County charge for possession of methamphetamine at the time he committed the offenses at issue in this case.  On appeal, it is undisputed that the prosecutor misspoke, as the pending Vilas County charge was actually for possession of narcotic drugs. Nevertheless, we agree with the State that Lussier is not entitled to relief on this basis because the circuit court did not actually rely on the prosecutor's misstatement regarding the nature of the pending charge.  The court did not even mention the pending charge during its sentencing remarks, much less give "explicit attention" or "specific consideration" to that charge.  *See id.* (citation omitted).  Nothing in the court's sentencing remarks would support a conclusion that the prosecutor's misstatements about the pending charge "formed part of the basis for [Lussier's] sentence."  *See id.* (citation omitted).

¶13    In arguing to the contrary, Lussier emphasizes that the circuit court made two references to methamphetamine, in general, during its sentencing remarks.  He contends that those comments "made it sound like Lussier was a regular user of methamphetamines and that he had a serious drug problem and that his meth problem contributed in some way to the victim's death."  As the State correctly notes, however, the court's comments regarding Lussier's involvement with methamphetamine were supported by information in the PSI and the criminal complaint—information that Lussier does not argue is inaccurate.

¶14    First, the circuit court stated during its sentencing remarks that Valliere's death was "further evidence to this Court that meth is death, and that [Lussier] is an individual … who has been providing all the characteristics of

someone who is irresponsible, and [not] taking responsibility for himself, and for his friends." This remark related directly to the facts surrounding Valliere's murder. According to the criminal complaint, a witness told police that she was riding in a van with Valliere, Lussier, and two of Lussier's codefendants on the night of Valliere's murder, and "[the two codefendants] were yelling at [Valliere] over money and a meth pipe that [Valliere] had supposedly stolen," and one of the codefendants "was asking [Valliere] where his 'shit' was." Another witness told police that Valliere was killed because he was planning to become a confidential informant. According to that witness, Valliere, Lussier, and Lussier's codefendants left a party on the night of Valliere's murder and "went for a ride." "During the ride, they were giving [Valliere] methamphetamine," and "[Valliere] knew this was to be his last ride." We agree with the State that these allegations—the accuracy of which Lussier does not dispute—show that methamphetamine was "a key piece of the puzzle that resulted in [Valliere's] death." The court's comment that "meth is death" related to this accurate information, rather than to the inaccurate information regarding the nature of Lussier's pending Vilas County charge.

¶15 The circuit court's second reference to methamphetamine at sentencing expressly referred to Lussier's history of substance abuse, which included the use of methamphetamine. Citing the PSI, the court stated that Lussier was

> accustomed to taking mass quantities of whatever substance he can get his hands on, which is not a good character trait. And not someone who would make a good candidate for probation. And not someone who could be dealt with in the community, and that the community would then be—have a feeling of safety is that this young man has now decided to quit drinking until he passes out, to quit doing meth until he is dysfunctional, to quit doing every

7

imaginable drug in the quantities that were made available to him.

¶16    Information in the PSI supports the circuit court's comments regarding Lussier's drug use.   When speaking to the PSI author, Lussier self-reported "a history of substance use which includes acid, cocaine, cough syrup, downers, gasoline, heroin, marijuana, morphine, mushrooms, and meth." He specifically admitted to using methamphetamine on a "[m]onthly" basis.  He further admitted that "every time he is on dope or any other type of drug he gets in trouble."  Lussier does not argue that the information in the PSI regarding his drug use—and, specifically, his use of methamphetamine—is inaccurate.  As such, Lussier cannot argue that the court relied on inaccurate information at sentencing when it referenced his use of methamphetamine, as a general matter.

¶17    In summary, although there was inaccurate information before the circuit court at sentencing regarding the nature of Lussier's pending Vilas County charge, the court did not rely on that inaccurate information when sentencing Lussier.  While the court made two general references to methamphetamine during its sentencing remarks, those comments were not based upon inaccurate information.   Accordingly, Lussier has failed to show that he is entitled to resentencing on these grounds.

## II.  Lussier's failure to come forward following Valliere's death

¶18    Lussier also argues that he is entitled to resentencing based on the prosecutor's comment that he "didn't come seeking out law enforcement, they had to go find him and seek him out."   Lussier asserts that this comment was inaccurate because it is undisputed that he attempted to turn himself in to the Vilas County Sheriff's Department on February 9, 2018.

¶19     We agree with the State that, when read in context, the prosecutor's comment is not inaccurate.  Valliere was killed in December 2017, and Lussier did not attempt to turn himself in until February 2018.  While discussing the credit that the circuit court should grant Lussier for his cooperation with law enforcement, the prosecutor observed, "[I]t's also important to note the Defendant had time to cooperate *right away*.  He could have said something *in December*, he chose not to."  (Emphasis added.)  Immediately thereafter, the prosecutor stated that Lussier "didn't come seeking out law enforcement, they had to go find him and seek him out."  In context, it is clear that the prosecutor's statement that Lussier "didn't come seeking out law enforcement" was referring to Lussier's failure to seek out law enforcement in December 2017, shortly after the homicide occurred.

¶20     The prosecutor's comments about Lussier's failure to cooperate with law enforcement in December 2017 were not inaccurate.  Again, it is undisputed that Lussier waited until February 2018, after a warrant had been issued for his arrest, to attempt to turn himself in to the Vilas County Sheriff's Department.  Moreover, after that attempt failed, Lussier did not attempt to turn himself in to Iron County authorities, as directed by the Vilas County deputies.  Instead, Lussier was apprehended over one week later in Winnebago County.  On this record, the prosecutor's comments about Lussier's failure to cooperate with law enforcement in December 2017 were not "extensively and materially false."  *See Travis*, 347 Wis. 2d 142, ¶18.

¶21     In addition, Lussier has failed to show that the circuit court actually relied on the prosecutor's comments about his failure to cooperate with law enforcement.  Lussier concedes that the court "did not explicitly refer to Lussier's failure to initially come forward when it sentenced him."  He notes, however, that

the court stated the prosecutor's analysis was "sound" and "reasonable" and that the court would "follow the recommendation that the State requested." Lussier argues that the court's "adoption of the State's 'analysis'" shows that the court "relied on the State's rationale." He then asserts that when the court "adopted the State's rationale, it relied on the fact that Lussier had not come forward, which was not at all accurate."

¶22    This argument is unpersuasive. Lussier cites no authority in support of the proposition that we may conclude a circuit court actually relied on a specific piece of inaccurate information in a case where the court merely stated, as a general matter, that the prosecutor's sentencing arguments were "sound" and "reasonable." To the contrary, in order to demonstrate actual reliance, Lussier must show that the court gave "explicit attention" or "specific consideration" to the inaccurate information, such that the misinformation formed part of the basis for his sentence. *See Tiepelman*, 291 Wis. 2d 179, ¶14 (citation omitted). Here, nothing in the court's sentencing remarks shows that it gave *explicit* attention or *specific* consideration to the prosecutor's comments about Lussier failing to cooperate with law enforcement in December 2017. Lussier has therefore failed to show that the court actually relied on those comments.

¶23    In his reply brief on appeal, Lussier asserts for the first time that the circuit court failed to follow *State v. Gallion*, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, because it did not "explain its reasons for imposing the sentence that it did, other than to say it found the State's analysis sound and it was going to follow it." We need not address arguments that are raised for the first time on appeal, *see Tatera v. FMC Corp.*, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810, or for the first time in a reply brief, *see A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). We therefore

decline to address Lussier's new claim that the court erred by failing to follow *Gallion*.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

11