COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP147-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF1968

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DEMETRIUS UNDRE BLAKES,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE A. HAVAS, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Colón, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Demetrius Undre Blakes appeals from a judgment of conviction, entered upon a jury's verdicts, for attempted first-degree intentional homicide while using a dangerous weapon, first-degree reckless injury while using a dangerous weapon, and possession of a firearm by a felon.   He also appeals the order denying his motion for postconviction relief on two claims:  (1) ineffective assistance of counsel, which was denied after a *Machner*[1] hearing;  and (2) resentencing due to the circuit court relying on inaccurate information at sentencing.   Upon review, we affirm.

## BACKGROUND

¶2     This case arises out of an altercation between Blakes and an acquaintance, C.K., outside of a gas station in the 2000 block of West Center Street in Milwaukee on April 20, 2018.   According to the criminal complaint, during the physical fight, Blakes pulled out a handgun and shot C.K., who then went to the trunk of his car and pulled out a shotgun.   Blakes fled the scene.

¶3     The case proceeded to trial in August 2019.   C.K. testified that he and Blakes had known each other for about four years, but had recently been on bad terms because he suspected Blakes had stolen property from him.   C.K. testified that he was unarmed when he hit Blakes with his fists and a fight broke out.   C.K. testified that Blakes pulled out a handgun and tried to shoot C.K. in the chest, but his gun "clicked" and jammed.   Blakes then ran and C.K. followed with caution, because he perceived Blakes as attempting "to unjam [the gun]."   C.K. said he and Blakes were "moving around" each other, Blakes was "trying to get

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

away" and they were "talking shit to each other[.]" C.K. testified that Blakes still had the gun pointed at him when it "went off." Although initially unsure if he had been hit, C.K. noticed blood on his shirt. Blakes "ran right in front of [C.K.'s] car." C.K. proceeded to the trunk of his car, from which he retrieved a shotgun, because Blakes "was still there, like he was trying to shoot still." By the time C.K. removed the shotgun, Blakes had run away.

¶4 The State played for the jury the surveillance video camera footage as well as showed still photographs from the gas station surveillance footage. C.K. testified that he hit Blakes in the face, his second swing missed, and he was unaware if he hit Blakes in the ribs. C.K. denied having martial arts or fighting training. He testified that he followed Blakes around the parking lot to try to disarm him. During cross-examination, C.K. testified that he attempted to shoot at Blakes with the shotgun, the gun misfired, but he was trying to kill Blakes. C.K. described Blakes as backing away from him, with the gun in his hand, which C.K. perceived as Blakes attempting to "bait" him.

¶5 Blakes testified that he approached C.K. at the gas station with friendly intent; however, C.K. "threw a right hand at [his] ribs and broke [his] ribs." He testified that he sought medical treatment for his injured ribs two days after the shooting. He punched C.K. twice, and then pulled out the gun he carried for his protection, which was meant to scare C.K. away. Blakes denied that the handgun jammed or that he tried to take a shot before the shot that hit C.K. Blakes and C.K. walked around each other, but when they drew close, Blakes shot him. Blakes testified he was not trying to kill C.K., but only trying to keep him away.

¶6 Prior to deliberations, the jury was instructed on self-defense. The jury returned a guilty verdict on all three counts: attempted first-degree intentional

homicide while using a dangerous weapon, first-degree reckless injury while using a dangerous weapon, and possession of a firearm by a felon. The circuit court sentenced Blakes to thirty-three years, bifurcated as twenty-three years of initial confinement and ten years of extended supervision.

¶7 Blakes moved for postconviction relief on the basis of ineffective assistance of counsel. First, he asserted that trial counsel failed to introduce *McMorris*[2] evidence that Blakes knew of C.K.'s habit of being armed. Second, he contended that trial counsel failed to introduce medical records evidence that Blakes suffered broken ribs as a result of this incident. Third, he argued that trial counsel was ineffective for failing to request a lesser included offense of second-degree reckless injury.[3]

¶8 The circuit court granted Blakes a *Machner* hearing on his claims, during which both trial counsel and Blakes testified in September 2022. The circuit court concluded that Blakes failed to meet his burden to show that trial counsel was ineffective. The court concluded that the proposed *McMorris* evidence was likely not admissible in the way Blakes would have presented it—the court noted that a habit of carrying a gun is not the same as Blakes presenting

---

[2] *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973). Under *McMorris*, when a defendant raises self-defense to a homicide and "there is a factual basis to support such defense, the defendant may … establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident." *Id.* at 152. "*McMorris* allows the admission of opinion and reputation evidence and evidence of the victim's prior violent acts known to the defendant under limited circumstances." *State v. Daniels*, 160 Wis. 2d 85, 108, 465 N.W.2d 633 (1991).

[3] Blakes initially also argued that trial counsel was also ineffective for failing to pursue a jury instruction on the lesser-included offense of second-degree intentional homicide as mitigated by imperfect self-defense; however, he withdrew this claim at the beginning of the *Machner* hearing. We do not further address this claim.

evidence of specific previous acts of gun-related violence by C.K. or evidence of a violent character. Next, the court concluded that trial counsel offered a strategic reason to not present the medical records because he then would have had to explain that Blakes lied to medical personnel that the injuries were caused another way, which would impugn Blakes's credibility. In light of the video and the totality of evidence at trial, the court concluded that there was no prejudice for failing to introduce the medical records. Finally, the court concluded there was no basis by which the jury could have found that Blakes acted without utter disregard for human life; therefore, there was no reasonable probability of a different result if counsel had asked for the lesser-included offense of second-degree reckless injury. The court noted that the ultimate defense strategy was acquittal on the basis of perfect self-defense, which was reasonable; therefore, counsel's reasoning not to pursue lesser-included offenses was not deficient.

¶9 With leave from this court, Blakes supplemented his postconviction motion to assert a claim that the court relied upon inaccurate information when it sentenced him. He asserted that the circuit court's sentencing remarks that C.K. ran away from Blakes and Blakes chased him during the altercation reflected a mistaken recollection by the court. Additionally, Blakes argued that a new factor warranted sentence modification based upon medical records supporting Blakes's claim that his ribs were injured during the altercation.

¶10 The circuit court's written decision denied Blakes's motion and supplemental motion in full. The court concluded that the medical records were not a new factor relevant to the imposition of his sentence because the records did not establish when Blakes was injured. The records themselves state that Blakes reported injuring his ribs running into a brick ledge, and even if the court accepted that C.K. was the true cause of the injury, the video evidence does not prove that

C.K. punched Blakes before Blakes drew his gun or shot him. The court found that "the video showed that other punches were thrown *after the victim was shot.*" (Emphasis in original.) The court concluded that the medical records would not change the court's reasoning because even if Blakes's version was true, he would have been justified to take a swing at C.K., who punched him first, but he was not justified to pull out a gun. Having concluded Blakes had failed to present a new factor, the court denied the motion for sentence modification.

¶11    The court denied Blakes's motion for resentencing based on Blakes's allegation that the court had sentenced him based on an inaccurate recollection of the video evidence. Blakes objected to the characterization that he chased C.K. The State argued that the video evidence supported the court's statement that Blakes ran toward C.K. during this encounter. The court agreed with the State and concluded that it did not rely upon inaccurate information at sentencing.

¶12    Blakes now appeals.

## DISCUSSION

¶13    Blakes makes two sets of claims for postconviction relief. First, he asserts trial counsel was ineffective: (1) for failing to introduce *McMorris* evidence that he knew C.K. commonly carried a firearm; and (2) for failing to introduce evidence, in the form of medical records, that Blakes suffered broken ribs as a result of C.K.'s attack. Second, he contends that the circuit court relied

upon inaccurate information, meaning the court's interpretation of the video evidence that Blakes was chasing C.K., when it sentenced him.[4]

## I.    *Ineffective assistance of counsel*

¶14    To succeed on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test in ***Strickland v. Washington***, 466 U.S. 668, 687 (1984):  deficient performance and prejudice to the defense from that performance.  To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." ***Id.*** at 688.  To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.*** at 694.  The reviewing court need not address both inquiries if a defendant fails to make a showing on one of them. ***Id.*** at 697.

¶15    A claim of ineffective assistance of counsel presents a mixed question of fact and law. ***State v. Carter***, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695.  We will uphold the circuit court's findings of fact unless clearly erroneous. ***Id.***  "Findings of fact include the circumstances of the case and counsel's conduct and strategy." ***State v. Arrington***, 2022 WI 53, ¶34, 402 Wis. 2d 675, 976 N.W.2d 453, *cert. denied*, 143 S. Ct. 411 (2022).  "Whether

---

[4] We note that Blakes does not renew his arguments that trial counsel was ineffective for failing to ask for jury instructions on lesser included offenses and that the medical records presented a new factor requiring sentencing modification. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 491, 588 N.W.2d 285, 292 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

counsel's performance satisfies the constitutional standard for effective assistance of counsel is a question of law, which we independently review." ***Id.***

¶16     We conclude that both of Blakes's ineffectiveness claims fail on the prejudice prong. First, Blakes argues that his defense was prejudiced because trial counsel failed to introduce ***McMorris*** evidence that he knew C.K. commonly carried a firearm, which would have bolstered the jury's understanding of the reasonableness of his belief of his need to defend himself. However, Blakes's argument contradicts his testimony that he was "close friends" with C.K. and he went "to give [C.K.] a hug" when he saw C.K. outside the gas station. Evidence that Blakes was simultaneously afraid of C.K. due to his habit of carrying a gun and also wanted to hug C.K. when he saw him would not have bolstered Blakes's case for self-defense. Furthermore, the jury heard C.K.'s own testimony that he threw the first punch and he was trying to kill Blakes. The jury had ample opportunity to consider Blakes's reasonable belief in his need for self-defense and rejected it. Therefore trial counsel's failure to introduce ***McMorris*** evidence does not undermine our confidence in the verdict.[5] ***Strickland***, 466 U.S. at 694.

¶17     Second, Blakes argues that his defense was prejudiced by trial counsel's failure to introduce medical record evidence that Blakes suffered broken ribs as a result of C.K.'s attack. The circuit court concluded that even if the

---

[5] We decline to address whether trial counsel was deficient for failing to pursue ***McMorris*** evidence. The circuit court concluded that Blakes had not shown that evidence that he knew C.K. commonly carried a gun would be admissible; that even if C.K. commonly carried a gun that did not necessarily signal a violent character, and that Blakes had not presented evidence of specific acts of gun-related violent conduct by C.K. We conclude that even if evidence of C.K.'s "violent character" was admissible and that trial counsel was deficient for failing to pursue it, Blakes has not made a showing that there was a reasonable probability of a different outcome but for counsel's failures on this point. ***State v. Head***, 2002 WI 99, ¶6, 255 Wis. 2d 194, 648 N.W.2d 413; ***Strickland v. Washington***, 466 U.S. 668, 694 (1984).

medical records had been introduced, they did not establish that Blakes had been injured by C.K. before Blakes pulled out his gun or before he shot C.K. We agree. Blakes testified that he was injured during the altercation and trial counsel testified at the ***Machner*** hearing that he believed Blakes's testimony was sufficient evidence to make the jury aware of his injury. Having objective evidence of Blakes's injury through the medical records may have bolstered his credibility, but as trial counsel testified, Blakes's credibility would also be reduced because Blakes told medical personnel he was injured running into a brick ledge. Further, even if we accept that Blakes had been injured as he claims, he has not shown that pulling a gun during a fist fight was a proportionate act of self-defense. We conclude that there was not a reasonable probability of a different outcome but for trial counsel's failure to introduce medical records.

## II. *Inaccurate information at sentencing*

¶18 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." ***State v. Tiepelman***, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether a defendant has been denied due process is a question of law that we review independently. ***Id.***

¶19 A defendant seeking resentencing "must show by clear and convincing evidence that: (1) some information at the original sentencing was inaccurate, and (2) the circuit court actually relied on the inaccurate information at sentencing." ***State v. Coffee***, 2020 WI 1, ¶38, 389 Wis. 2d 627, 937 N.W.2d 579. If "the defendant shows actual reliance on inaccurate information, the burden then shifts to the State to prove the error was harmless." ***State v. Travis***, 2013 WI 38, ¶23, 347 Wis. 2d 142, 832 N.W.2d 491. "A reviewing court must independently review the record of the sentencing hearing to determine the existence of any

actual reliance on inaccurate information." *Id.*, ¶48. "We review the circuit court's articulation of its basis for sentencing in the context of the entire sentencing transcript[.]" *State v. Alexander*, 2015 WI 6, ¶25, 360 Wis. 2d 292, 858 N.W.2d 662.

¶20 Blakes argues that the circuit court relied upon a mistaken recollection from the surveillance video evidence that Blakes chased C.K., as shown by the court's statement: "[C.K.] ran from you. And you chased him." He asserts that this constitutes inaccurate information and the court actually relied upon that information in its sentencing, resulting in a weightier sentence because of the aggravated facts.[6]

¶21 While Blakes asserts that the court's characterization does not fairly represent the content of the video, the court's version is not incredible. This court does not consider information "inaccurate" merely because it is disputed. The defendant must demonstrate the information was "extensively and materially false." *Travis*, 347 Wis. 2d 142, ¶18.[7] We conclude that Blakes has not satisfied his burden in the threshold inquiry in an inaccurate sentencing claim—that the information was inaccurate. *State v. Harris*, 2010 WI 79, ¶32, 326 Wis. 2d 685,

---

[6] The State argues that Blakes's claim is forfeited because he failed to object during the sentencing hearing. Blakes responds that the State forfeits its forfeiture argument because it failed to raise this issue to the circuit court during the postconviction proceedings. "The purpose of the 'forfeiture' rule is to enable the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612. "Although two wrongs do not make a right," we conclude that the value of the forfeiture rule would not be depreciated by addressing the merits of this argument, which was fully briefed. *Id.*, ¶ 38.

[7] As Blakes urged this court to do, we also reviewed the surveillance video footage. While it is certainly true that C.K. chased Blakes, Blakes was in offensive and defensive postures with the two men moving around and past each other several times. We do not consider the court's characterization incredible.

786 N.W.2d 409. The court's sentencing remarks show that the sentence imposed was based on Blakes's actions to shoot an unarmed person during a fist fight and to respond disproportionately to a perceived threat. We conclude that the circuit court did not violate Blakes's constitutional right to due process when it imposed this sentence. *Tiepelman*, 291 Wis. 2d 179, ¶9.

## CONCLUSION

¶22 For the reasons stated above, we conclude that Blakes's motion for postconviction relief on the basis of ineffective assistance of counsel and inaccurate information at sentencing fails. We affirm both the judgment of conviction and the order of the circuit court.

> *By the Court.*—Judgment and order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.