**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 29, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP928-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CF4

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

AUSTIN J. PAUL,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Calumet County: DANIEL J. BOROWSKI and CAREY J. REED, Judges. *Affirmed*.

Before Neubauer, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.    Austin J. Paul appeals a judgment of conviction and an order denying postconviction relief.  For the following reasons, we affirm.

## BACKGROUND

¶2     In 2018, Paul, a 17-year-old junior in high school, and Candace,[1] a 14-year-old freshman in high school, were dating.  The Calumet County Sheriff's office received a report from Candace's therapist that she had admitted to a sexual relationship with Paul when she was 14 years old.   When speaking to investigators, both Paul and Candace admitted to having sexual intercourse approximately 10-20 times and to sometimes drinking liquor prior to having sex.  Candace informed investigators that she did not feel she had been forced to do things she did not want to do.   The investigator educated and advised Paul, Candace, and their parents about the possible penalties resulting from sexual intercourse between minors, and the matter was closed.   However, in 2020, investigators received a Child Protective Services report that noted that Candace stated she "ha[d] been assaulted in the past by her past boyfriend" and that he had raped her, would get her drunk, push her around, and threaten her when she told him no to sex:

> [Candace] reported that [Paul] raped her throughout their relationship.  He would get her drunk.  She would tell him no but he would say to her, "if you don't, something will happen[."] … [She] report[ed] … that he would push her around and rape her during their relationship.  They are no longer together and they broke up in January of 2020.

---

[1] Consistent with the policy in WIS. STAT. RULE 809.19(1)(g) (2023-24), the victim is identified by a pseudonym.  All references to the Wisconsin Statutes are to the 2023-24 version.

¶3     Accordingly, the State filed a criminal complaint against Paul in January 2021, charging him with one count of attempted sexual assault of a child under 16 years of age (WIS. STAT. § 948.02(2)); two counts of sexual assault of a child under 16 years of age (*id.*); and one count of underage sexual activity with a child age 15 or older where the actor is under age 19 (WIS. STAT. § 948.093).

¶4     Paul signed a plea waiver and reached a plea agreement with the State, in which he agreed to plead no contest to sexual assault of a child under 16 years of age in exchange for the remaining counts being dismissed and read in. After the circuit court conducted a plea colloquy with Paul, it accepted the no contest plea, found Paul guilty, and dismissed and read in the other counts.

¶5     The circuit court then moved on to sentencing. The State requested 7 years of initial confinement and 13 years of extended supervision with conditions to include a psychosexual evaluation and treatment and that Paul register for 15 years as a sex offender. Paul's counsel asked the court to withhold sentence and place Paul on probation, citing Paul's good character and because the case simply involved "[t]wo teenagers having sex in high school." The court agreed with Paul and sentenced him to 15 years of probation, finding that it had to protect the public and hold Paul accountable for his wrongdoings:

> So I'm going to withhold sentence and put … Paul on probation for a period of 15 years, and that's long. I have up to 25 by the way. And I do that, that length of time, because if -- frankly in terms of protecting the public let's start there, if the [c]ourt's analysis, I don't want to say is wrong, but if my sense of what occurred here is an error, and that in deep down … Paul is the person that is described in the victim's statement and writing that was provided to the [c]ourt and ultimately, he needs to face and be accountable. And a long period of supervision accomplishes that.

3

¶6      The circuit court added that it found extended supervision necessary, citing the "manipulative element" of Paul's crime. As part of Paul's probation, the court ordered that he undergo a psychosexual evaluation, counseling, and treatment; be completely sober; and serve twelve months of conditional jail time. The court, however, wanted briefing from the parties regarding whether Paul should be put on the sex offender registry and deferred that issue to a future hearing.

¶7      Paul moved to apply the WIS. STAT. § 301.45(1m)(a)1m. underage sexual activity exception to the sex offender registry, which the State opposed. The circuit court held a hearing where it considered whether Paul should register as a sex offender. It heard testimony from Dr. Anthony Jurek on his psychosexual evaluation of Paul, which included his review of a report of a psychosexual evaluation of Paul that was ordered by the court and conducted by Dr. Jessica Anderson of the Department of Corrections. Dr. Jurek's report found that Paul did not have "a deviant sexual arousal pattern," was at low risk to reoffend, and that being placed on a sex offender registry could have multiple negative effects on him and could increase his recidivism risk. Dr. Anderson's report opined that Paul required "little or no intervention" but would benefit from individualized therapy discussing topics of consent, problem-solving, and healthy relationships.

¶8      Ultimately, the circuit court found that there was clear and convincing evidence that "the sexual intercourse that occurred here was not the product of the use of threat of force or violence" and found that Paul met his burden showing the registry exception applied to his case. The court cited Paul's low recidivism risk that was intertwined with the interest of public protection. Accordingly, the court ruled that Paul did not need to register as a sex offender. The court stated that it did not "have the benefit" of the psychosexual evaluations

at the time of sentencing where it felt the probation period was appropriate in order to protect the public "for an extended period of time[.]"

¶9 In 2023, Paul moved for postconviction relief on three grounds, arguing that the circuit court sentenced him on inaccurate information regarding his recidivism risk and public safety risk; Dr. Jurek's psychosexual evaluation provided a new factor; and he received ineffective assistance of counsel at trial by not being advised to undergo a psychosexual evaluation prior to sentencing, which thus prejudiced him. The postconviction court denied Paul's motion without an evidentiary hearing, but after a motion hearing, finding that there was no inaccurate information at issue; Dr. Jurek's report did not constitute a new factor; and Paul did not receive ineffective assistance of counsel as it was speculation that the results would be different had Paul undergone the psychosexual evaluation prior to sentencing. Paul appeals.

## DISCUSSION

¶10 On appeal, Paul makes three claims: (1) the circuit court erred when denying the challenge based on inaccurate information because the court sentenced Paul based on inaccurate statements regarding his recidivism risk; (2) the court erred when it found that the information in Dr. Jurek's psychosexual information was not a new factor; and (3) Paul's counsel was ineffective by not advising Paul to submit to a psychosexual evaluation prior to the sentencing and was therefore prejudiced. We address each claim below.

## I. Inaccurate information

¶11 Paul contends that the postconviction court erred by denying his motion for sentencing relief because the circuit court relied on inaccurate

information about Paul's recidivism risk when it imposed 15 years of probation, and therefore his Sixth and Fourteenth Amendment rights were violated. We disagree.

¶12    "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. We review de novo whether a defendant's due process right was violated. *Id***.** A due process violation occurs where a sentence relies "on a foundation so extensively and materially false, which the [defendant] had no opportunity to correct." *Id.*, ¶10 (citation omitted). To succeed on such a claim, a "defendant must show by clear and convincing evidence that: (1) some information at the original sentencing was inaccurate, and (2) the circuit court actually relied on the inaccurate information at sentencing." *State v. Coffee*, 2020 WI 1, ¶38, 389 Wis. 2d 627, 937 N.W.2d 579. Reliance on incorrect information occurs when the court gives "'explicit attention' or 'specific consideration' to it, so that the misinformation 'formed part of the basis for the sentence.'" *Id*. (citation omitted). "If [a] defendant meets this burden, then the burden shifts to the State to prove beyond a reasonable doubt that the error was harmless." *Id*. To show harmless error, the State must "demonstrat[e] that the [circuit] court would have imposed the same sentence absent the error." *Id***.** (citation omitted). "The most important piece of evidence for [an] appellate] court is the sentencing transcript itself, not 'the [postconviction] court's assertions' or 'speculation about what a circuit court would do the in the future upon resentencing.'" *Id.* (last alteration in original; citation omitted). Thus, a defendant is entitled to resentencing if the State fails to meet its burden; however, if the State does meet its burden, we will not disturb the sentence. *Id***.**

6

¶13 Here, Paul argues that the circuit court would have sentenced him less harshly if it had psychosexual evaluations of Paul at sentencing, while conceding that "this case does not specifically implicate a specific fact or piece of evidence that was inaccurate or untrue[.]" We disagree. The sentencing transcript shows several reasons for the court's imposition of a 15-year probationary period so as to protect the public. For one, the court ordered the 15-year probationary period to protect the public in reliance on the victim's statement:

> So I'm going to withhold sentence and put … Paul on probation for a period of 15 years, and that's long. ... And I do that, that length of time, because if -- frankly in terms of protecting the public ... and that i[f] deep down … Paul is the person that is described in the victim's statement and writing that was provided to the [c]ourt ... he needs to face and be accountable. And a long period of supervision accomplishes that.

¶14 The circuit court also stated that the length of this sentence was due in part to Paul's manipulative nature:

> It's a challenge as a Judge, but I think an extended period, because I am worried, there was a manipulative element to this, there's no question.

¶15 The circuit court moreover confirmed that the length of the sentence related to the seriousness of the offense, the issue of consent, and the facts at hand:

> But I think that's -- it's a long period, but I don't think it's inappropriate in light of the seriousness of this offense, the facts, and the victim's current and the most recent version of this, and certainly considering the impact that this, the defendant's acts, had on the victim. ... [N]o means no. ... A 14-year-old couldn't consent, and the mere fact it happened does create a risk. And it's one that is serious. He's convicted of a Class C felony and the [c]ourt needs to account for in any length and duration of probation.

¶16 The circuit court thus based Paul's sentence mainly on the seriousness of his crime, concern for the general public, and the victim's

statements. Paul has not shown that "some information at the original sentencing was inaccurate[.]" *See Coffee*, 389 Wis. 2d 627, ¶38. Paul has not pointed to information "on a foundation so extensively and materially false" that it deprived him of due process. *See Tiepelman*, 291 Wis. 2d 179, ¶10 (citation omitted). Paul even concedes that "this case does not specifically implicate a specific fact or piece of evidence that was inaccurate or untrue[.]" We conclude that Paul does not meet his burden to show that the court relied upon false or inaccurate information when it sentenced Paul, and that the postconviction court did not err in denying his motion on this claim.

## II. New factor

¶17 Paul argues next that the postconviction court erred by finding Dr. Jurek's psychosexual evaluation of Paul did not constitute a new factor as it was "highly relevant and material to the ultimate sentencing decision." We disagree.

¶18 A "new factor" is defined as "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all the parties." *State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted). Whether a defendant's motion presents a new factor is a question of law that we review de novo. *Id.*, ¶33. Notably, "recharacterization or reweighing of previously known facts is not a 'new factor' for sentence modification purposes." *State v. Grindemann*, 2002 WI App 106, ¶25, 255 Wis. 2d 632, 648 N.W.2d 507. "[E]xpert[] opinion[s] based on previously known or knowable facts" are not new

factors. *State v. Sobonya*, 2015 WI App 86, ¶7, 365 Wis. 2d 559, 872 N.W.2d 134.

¶19 Here, Paul improperly asserts that the psychosexual evaluations conducted by Dr. Jurek and Dr. Anderson constitute new factors. The psychosexual evaluations offered expert opinions on whether Paul needed to register as a sex offender and relied on already-known facts before the circuit court. *See Grindemann*, 255 Wis. 2d 632, ¶25; *Sobonya*, 365 Wis. 2d 559, ¶7. Paul's claim that the postconviction court erred in not finding that Dr. Jurek's and Dr. Anderson's reports constituted new factors for purposes of sentence modification fails because they were expert opinions that relied on already known facts at the time of sentencing. Thus, we conclude the court did not err with respect to this claim.

## III. Ineffective assistance of counsel

¶20 Paul next argues that the postconviction court erred when it denied his motion for relief regarding his ineffective assistance of counsel claim and denying him a *Machner* hearing. *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). Again, we disagree because Paul was not entitled to a hearing.

¶21 We review an ineffective assistance of counsel claim as a mixed question of fact and law. *State v. Gutierrez*, 2020 WI 52, ¶19, 391 Wis. 2d 799, 943 N.W.2d 870. Unless clearly erroneous, we affirm the circuit court's factual findings regarding "trial counsel's conduct and strategy" but review the constitutional standard of ineffective assistance of counsel as a question of law de novo. *Id.*

9

¶22   An ineffective assistance claim will only succeed when a defendant "demonstrate[s] both that (1) counsel's representation was deficient, and (2) the deficiency was prejudicial." *State v. Ruffin*, 2022 WI 34, ¶29, 401 Wis. 2d 619, 974 N.W.2d 432.   We need not address both prongs if the defendant does not sufficiently show evidence on one.  *Id.*

¶23   To show "deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances."  *Id.*, ¶30.  The errors made by counsel must be "so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Moreover, "we are highly deferential to counsel's strategic decisions" and do not expect "perfect, or even very good" performance; just "constitutionally adequate" performance.  *Ruffin*, 401 Wis. 2d 619, ¶30.  Courts must also do everything in their power to avoid "hindsight" when analyzing counsel's conduct and rather "evaluate the conduct from counsel's perspective at the time."  *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted).

¶24   Whether a defendant is entitled to a *Machner* hearing is a mixed question of law and fact.  *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  We review de novo "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief."  *Id.*  If sufficient material facts were raised, a defendant is entitled to a *Machner* hearing; however, if such facts were not raised and are either conclusory, or the record clearly demonstrated they do not exist, then the circuit court has discretion to deny the hearing.  *Allen*, 274 Wis. 2d 568, ¶9.  This part of the review is "under the deferential erroneous exercise of discretion standard."  *Id.*  Erroneous exercise of

discretion occurs when "it is based on an error of fact or law." ***Ruffin***, 401 Wis. 2d 619, ¶28.

¶25 Paul claims that his counsel "was ineffective as a matter of law" because he failed to advise Paul or inform the circuit court "what a psychosexual evaluation was or how it could be helpful to his sentencing presentation" and thus Paul was unable to combat the State's claims regarding his recidivism risk. However, counsel enjoys "a strong presumption" in regard to what "falls within the wide range of reasonable professional assistance[,]" and Paul does not point to any error "so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *See **Strickland***, 466 U.S. at 687, 689. Paul points to no evidence that the court would have sentenced him differently if it had these or other psychosexual evaluations of him and instead merely speculates that it could have sentenced him less harshly. The Record shows that the court sentenced Paul to a lengthy probationary period for several reasons. It relied on: the element of manipulation in Paul's crime; the seriousness of the offense; the impact Paul's actions had on Candace; and the fact that Candace was 14 years old and could not consent to sexual intercourse. Paul fails to show that psychosexual evaluations of him made for the purpose of assessing whether Paul needed to register as a sex offender would have served to mitigate his sentence. Paul has failed to show his counsel was deficient, and therefore, he cannot show that he was prejudiced. Thus, the postconviction court did not err in denying Paul's ineffective assistance of counsel claim and did not err by not holding a ***Machner*** hearing.

*By the Court.*—Judgment and order affirmed.

11

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.